Charles F. SAMUEL and Valerie A. Samuel, Plaintiffs,

v.

James MICHAUD, Individually, and in his Official Capacity as 1st Judicial District–Idaho Judge; Quentin Harden, Individually, and in his Official Capacity as 1st Judicial District–Idaho Magistrate; Eugene Marano, Individually, and in his Official Capacity as 1st Judicial District–Idaho Magistrate; Gary Haman, Individually, and in his Official Capacity as 1st Judicial District–Idaho Judge; Robert Bakes, Individually, and in his Official Capacity as former Idaho Supreme Court Judge; Charles McDevitt, Individually, and in his Official Capacity as Idaho Supreme Court Judge; Larry Boyle, Individually, and in his Official Capacity as former Idaho Supreme Court Judge and Current U.S. District Court Judge–Idaho Magistrate; Stephen Bistline, Individually, and in his Official Capacity as Idaho Supreme Court Judge; Michael Oths, Individually, and in his Official Capacity as Idaho State Bar Counsel; Stephen Ayers, Individually, and in his Official Capacity as former U.S. District Court Magistrate; Mikel Williams, Individually, and in his Official Capacity as U.S. District–Idaho Magistrate; Harold Ryan, Individually, and in his Official Capacity as U.S. District Court–Idaho Judge; Edward Lodge, Individually, and in his Official Capacity as U.S. District Court–Idaho Judge; Maurice Ellsworth, Individually, and in his Official Capacity as former U.S. Attorney for Idaho; D. Marc Haws, Individually, and in his Official Capacity as Assistant U.S. Attorney for Idaho; Andrea Pogue, Individually, and in her Official Capacity as Assistant United States Attorney for Idaho; Marie Scott, Individually, and in her Official Capacity as 1st Judicial District Court–Idaho Bonner Co. Clerk of Court; Kathleen Hutter, Individually, and in her Official Capacity as 1st Judicial District Court–Idaho Bonner Co. Deputy Clerk; Wanda Savage, Individually, and in her Official Capacity as 1st Judicial District Court–Idaho Bonner Co. Deputy Clerk; Sandra Roberts, Individually, and in her Official Capacity as 1st Judicial District Court–Idaho Bonner Co. Deputy Clerk; Frederick Lyons, Individually, and in his Official Capacity as Clerk of Idaho Supreme Court; Claudia Kopper, Individually, and in her Official Capacity as Administrative Assistant to Executive Director and as Clerk of Professional Conduct Board of Idaho State Bar; Robert Huntley, Jr., Individually, and in his Official Capacity as Chairperson for Professional Conduct Board of Idaho State Bar; Bruce Smith, Individually, and in his Official Capacity as Member of Professional Conduct Board/Idaho State Bar; Kathryn Sticklen, Individually, and in her Official Capacity as Member of Professional Conduct Board/Idaho State Bar; Linnae Costello, Individually, and in her Official Capacity as Member of Professional Conduct Board/Idaho State Bar; Patti Latham, Individually, and in her Official Capacity as former Deputy Clerk U.S. District Court–Idaho; Cameron Burke, Individually, and in his Official Capacity as Clerk U.S. District Court–Idaho; Ron Haberman, Individually, and in his Official Capacity as Deputy Clerk U.S. District Court–Idaho, Ann Wade-Lawron, Individually, and in her Official Capacity as Deputy Clerk U.S. District Court–Idaho; Darrell Ear-

ly, Individually, and in his official capacity as Law Clerk for U.S. District Court–Idaho, Lee Parker, Individually, and in her Official Capacity as Deputy Clerk U.S. District Court–Idaho; Sharla Worthen, Individually, and in her Official Capacity as Deputy Clerk U.S. District Court–Idaho; Byron Johnson, Individually, and in his Official Capacity as Idaho Supreme Court Judge; Chris Dreps, Individually, and in her Official Capacity as Deputy Clerk U.S. District Court–Idaho; Elizabeth Sharp, Individually, and in her Official Capacity as Deputy Clerk U.S. District Court–Idaho; Barbara Keck, Individually, and her Official Capacity as Court Recorder/ESR Unit U.S. District Court–Idaho; Irene Dunbar, Individually, and in her Official Capacity as Court Recorder/ESR Unit U.S. District Court–Idaho; Joanne Cook, Individually, and in her Official Capacity as Court Recorder/ESR Unit U.S. District Court–Idaho; Jerry Clapp, Individually, and in his Official Capacity as Deputy Clerk U.S. District Court–Idaho; Carl Bianchi, Individually, and in his Official Capacity as Deputy Clerk Idaho Supreme Court; Todd Foster, Private Person Acting Under the Color of State and Federal Law Authority and Custom; Spokesman Review Newspaper and/or John/Jane Does Thereof; Evan "Chip" Roos, Individually, and in his Official Capacity as Bonner County, Idaho Sheriff; Robert McCammon, Private Person Acting Under Color of State Law, Authority and Custom; Corroon & Black Administrative Services, Inc. and/or John/Jane Does Thereof; and Twenty Unnamed and Unknown John and Jane Does, Defendants.

Civil No. 94–0353–N–DAE.

United States District Court,
D. Idaho.

March 7, 1996.

Charles F. Samuel, Nordman, ID, pro se.

Valerie A. Samuel, Nordman, ID, pro se.

David G. High, Dist. Atty. Gen., Office of Attorney General, Dept. of Business Regulation, Boise, ID, for James Michaud, Quentin Harden, Eugene Marano, Gary Haman, Robert Bakes, Charles McDevitt, Stephen Bistline, Michael Oths, Marie Scott, Kathleen Hutter, Wanda Savage, Sandra Roberts, Fredrick Lyons, Claudia Kopper, Robert Huntley, Jr., Bruce Smith, Kathryn Sticklen, Linnae Costello, Byron Johnson.

David G. High, Dist. Atty. Gen., Office of Attorney General, Dept. of Business Regulation, Robert C. Grisham, U.S. Attorney's Office, Boise, ID, for Larry Boyle.

Duane M. Swinton, Spencer W. Stromberg, Witherspoon Kelley Davenport & Toole, Spokane, WA, for Todd J. Foster, Spokesman-Review Newspaper.

Peter C. Erbland, Paine Hamblen Coffin Brooke & Miller, Coeur d'Alene, ID, for Evan "Chip" Roos, Robert McCammon, Corroon & Black Administrative Services, Inc.

## *ORDER GRANTING FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART FEDERAL DEFENDANTS' MOTION FOR SANCTIONS, GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND FOR ATTORNEYS' FEES AND SUA SPONTE DISMISSING CLAIMS AGAINST REMAINING DEFENDANTS*

DAVID ALAN EZRA, District Judge.

The court heard Federal Defendants' Motions and State Defendants' Motion on February 22, 1996. Plaintiffs Charles F. Samuel and Valerie A. Samuel appeared *pro se*. Assistant United States Attorney Robert C. Grisham appeared for the late Honorable Harold Ryan, the Honorable Edward Lodge, the Honorable Mikel Williams, the Honorable Larry Boyle, the Honorable Stephen Ayers (together referred to as "Federal Judges"), Maurice Ellsworth, D. Marc Haws, Andrea Pogue (together referred to as "U.S. Attorney Defendants"), Jerry Clapp, Cameron Burke, Patti Latham, Ron Haberman, Ann Wade–Lawron, Sharla Worthen, Chris Dreps, Elizabeth Sharp, Barbara Keck, Irene Dunbar, Joanne Cook, Darrell Early, and Lee Parker (together referred to as "Federal Clerk Defendants") (full group collectively referred to as "Federal Defendants"). Deputy Attorney General David G. High appeared for the Honorable James Michaud, the Hon-

orable Quentin Harden, the Honorable Eugene Marano, the Honorable Gary Haman, the Honorable Stephen Bistline, the Honorable Byron Johnson (together referred to as "State Judges"), Marie Scott, Kathleen Hutter, Wanda Savage, Sandra Roberts, Frederick Lyons, Carl Bianchi (together referred to as "State Clerk Defendants"), Claudia Kopper, Robert Huntley, Jr., Bruce Smith, Kathryn Sticklen, Linnae Costello (together referred to as "State Bar Defendants") and Michael Oths, (full group collectively referred to as "State Defendants"). The court having reviewed the motions and the supporting and opposing memoranda, GRANTS Federal Defendants' Motion for Summary Judgment, GRANTS IN PART and DENIES IN PART Federal Defendants' Motion for Sanctions, and GRANTS State Defendants' Motion to Dismiss and for Attorneys' Fees.

### BACKGROUND

On August 26, 1994, Plaintiffs filed a forty-five page Amended Complaint[1] against all Defendants in their individual and official capacities, claiming a conspiracy to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. §§ 1981 et seq. and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The Amended Complaint begins by alleging that from January 1990, until the present date, all Defendants, while acting under color of state and federal law, conspired to cover up and conceal various violations of the law. The alleged violations of law are set forth in paragraphs VI A–L of the Amended Complaint. See also Background, Part I, infra. The Amended Complaint goes on to allege claims in twelve counts. Counts Three, Four, Eleven, and Twelve set forth claims against the Federal Defendants. Counts One, Two, and Five through Ten allege claims against State Defendants. Plaintiffs seek injunctive, equitable, and declaratory relief, as well as compensatory damages "in excess of $50,000 from each defendant." Amended Complaint, at 44.

1. On August 10, 1994, Plaintiffs filed their original complaint against named defendants. This

## I. General Allegations against All Defendants

Paragraphs VI A–G allege various acts of misconduct on the part of Forest Service employees, which are incidently the same acts of misconduct which were alleged in Samuel v. United States, United States District Court for the District of Idaho, No. 91–0087 ("Case 91–0087"). Paragraph VI H alleges various acts of misconduct on the part of various attorneys. Paragraphs VI I–L allege various acts of misconduct on the part of Bonner County Sheriff's employees.

Paragraph VII alleges that all Defendants agreed to rule against Plaintiffs in various lawsuits and administrative proceedings. Paragraphs VII(V) and (W) allege that in connection with the lawsuits and administrative proceedings, Defendants failed to uphold the law, failed to educate themselves on the issues raised by those proceedings, and failed to take steps to protect the interests of the public, all as set forth in Counts One through Twelve of the amended complaint.

Plaintiffs' claims against the Federal Defendants arise out of the dismissal of a Federal Tort Claims Act (FTCA) suit they brought against the United States in Case 91–0087. Since this FTCA suit is central to Plaintiffs' claims against Federal Defendants and to some of the general claims against all Defendants, the court summarizes the relevant procedural history of Case 91–0087 below.

### A. Procedural History of Underlying 1991 FTCA Claim

Plaintiffs' FTCA action was filed on or about March 14, 1991. The complaint alleged employees of the Forest Service conducted unlawful visual, audio, and personal surveillance of Plaintiffs; harassed Plaintiffs and influenced other government agencies to harass Plaintiffs; falsely accused Plaintiffs of stealing saw blades and other government property; issued Plaintiffs inappropriate road use permits; kept mail and messages of Plaintiff Charles Samuel at the Priest Lake Ranger Station; issued a fabricated AWOL charge against Plaintiff Charles Samuel for a

complaint was superseded and replaced by the August 26, 1994 Amended Complaint.

legitimate on-the-job injury; deliberately supplied Plaintiff Charles Samuel with faulty equipment thus hindering him in the performance of his duties as a Forest Service employee; trespassed on Plaintiffs' private property; and, falsely accused Plaintiffs of abusing and neglecting their children. *See* Federal Defendants' Statement of Facts, Exh. A. Plaintiffs alleged these actions violated their right to privacy and civil rights, and constituted negligence on the part of Forest Service employees. *Id.* They claim that as a result of these actions, they suffered serious personal injury, both mental and physical. *Id.*

On April 15, 1991, before the United States filed an answer to the complaint, Plaintiffs filed an amended complaint ("Second Complaint"). In addition to reiterating the allegations contained in the original complaint, the Second Complaint alleges that employees of the Forest Service concealed and suppressed facts and withheld information from Plaintiffs necessary to their complaint; acted negligently in providing medical attention and hospitalization for Plaintiff Charles Samuel; denied medical attention to Plaintiff Charles Samuel as a result of his refusing to sign a fabricated AWOL charge; acted negligently in not providing a vehicular driver for Plaintiff Charles Samuel's on-the-job injury; improperly garnished Plaintiff Charles Sam-

uel's wages and leave time; denied Plaintiff Charles Samuel schooling; denied Plaintiff Charles Samuel the right to overtime hours; denied Plaintiff Charles Samuel "work rotation" in "tree rolling shed"; refused to provide Plaintiff Charles Samuel with an equal chance for advancement; discriminated against Plaintiff Charles Samuel; denied Plaintiff Charles Samuel's civil rights to an equitable grievance in 1989; denied Plaintiff Charles Samuel fair/just civilian rehire rights; denied Plaintiff Charles Samuel veteran status rights; encouraged the segregation and alienation of Plaintiffs; ordered Plaintiff Charles Samuel to deliberately disobey certain federal procedures; discriminately expelled Plaintiffs' son from Little League baseball in 1990; entrapped Plaintiffs; insisted that Plaintiff Charles Samuel be prejudicial to non-caucasian (non-white) employees; conspired against Plaintiffs; and, made false accusations against Plaintiffs. *See* Federal Defendants' Statement of Facts, Exh. B.

On June 4, 1991, the parties filed their consent to proceed before a United States Magistrate Judge. *See* Federal Defendants' Statement of Facts, Exh. C.

The court dismissed all of Plaintiffs' claims except for the allegations involving invasion of privacy and intentional infliction of emotional distress.[2] Plaintiffs were permitted

---

**2.** On December 2, 1991, Magistrate Judge Ayers ruled on the United States' Motions to Dismiss Plaintiffs' Complaint and to Strike Plaintiffs' Freedom of Information Act Request, and Plaintiffs' motions for an order requiring the Forest Service to produce records and for leave to file a second amended complaint. *See* Federal Defendants' Statement of Facts, Exh. Q.

The court found the United States' motion to dismiss claims alleged under the FTCA was meritorious as to all such claims except for those brought for invasion of privacy and intentional infliction of emotional distress. The court held Plaintiffs' remaining tort claims should be dismissed because Plaintiffs had either failed to make the required administrative claim, or such claims were excepted from the FTCA's waiver of sovereign immunity. The court noted that while discovery had been stayed pending a decision on the United States' Motion to Dismiss, Plaintiffs would be permitted to proceed with discovery with respect to their invasion of privacy and intentional infliction of emotional distress claims.

The court then held there was no waiver of sovereign immunity for Plaintiffs' constitutional tort claims against the United States; if Plaintiffs

were allowed to amend their complaint to name Plaintiff Charles Samuel's supervisors as defendants, such claims would be precluded by the provisions of the Civil Service Reform Act; and, Plaintiff Charles Samuel's claims for denial of medical attention brought in negligence regarding the injury he received while on the job were governed by the Federal Employees Compensation Act.

With respect to Plaintiffs' remaining claims, the court stated it failed to discern a basis upon which to exercise its jurisdiction.

With respect to Plaintiffs' FOIA request, the court found that to the extent Plaintiffs had attempted to allege a new cause of action against the United States, such cause of action should be stricken.

Finally, with respect to Plaintiffs' motion for leave to amend their complaint, the court noted Plaintiffs had lodged with the court a "Second Amended Complaint." The court held the deficiencies in Plaintiffs' amended complaint were not cured by the proposed second amended complaint and therefore it denied Plaintiffs' motion.

discovery; they filed a number of interrogatories. They also unsuccessfully attempted to amend their complaint, and change venue on grounds of bias.[3] On the day set for trial, both the Government and the Plaintiffs moved for involuntary dismissal of Plaintiffs' Second Complaint. The court granted both motions on March 31, 1993. *See* Federal Defendants' Statement of Facts, Exh. PP.[4]

On August 16, 1993, Plaintiffs filed a notice of appeal. *See* Federal Defendants' Statement of Facts, Exh. SS.

On October 3, 1994, the Ninth Circuit Court of Appeals issued an unpublished order affirming the trial court's decisions. *See* Federal Defendants' Statement of Facts, Exh. YY. The Ninth Circuit held that the district court did not err in (a) refusing to allow Plaintiffs to file their proposed second amended complaint; (b) accepting the certification of the United States Attorney that the federal employees Plaintiffs sought to name as defendants were acting within the scope of their employment at the time of the alleged surveillance of Plaintiffs; (c) dismissing Plaintiffs' remaining claims with prejudice after they decided not to proceed with trial on the appointed date; and, (d) rejecting

Plaintiffs' claims that they were coerced and misled by district court personnel when they filed various pleadings, that District Court Clerks fraudulently destroyed their pleadings, and that court personnel tampered with and doctored portions of the record. *Id.*, at 2–4. Finally, the Ninth Circuit held that the other claims raised by Plaintiffs in their brief were without merit. *Id.*, at 4.

## II. Claims against Federal Defendants

In addition to the general allegations charged above, Counts Three, Four, Eleven, and Twelve set forth the following claims against Federal Defendants:

### Count Three

Count Three alleges claims against the Federal Judges and Federal Clerk Defendants. Count Three generally alleges that these Federal Defendants deprived Plaintiffs of due process of law with respect to Case 91–0087, and deprived Plaintiffs of equal protection as a result of a conspiracy to rule against Plaintiffs in that case. Count Three goes on to allege that the named Federal Defendants fraudulently coerced Plaintiffs into relinquishing their individual claims

3. .On March 5, 1993, Magistrate Williams issued an order on Plaintiffs' motions to compel, for shortening time period pursuant to Rule 34(b), to amend their complaint, to change venue, and for a continuance. *See* Federal Defendants' Statement of Facts, Exh. KK. With respect to Plaintiffs' motion for a continuance, the court noted Plaintiffs had alleged that because of the prejudice and bias of the court towards Plaintiffs, a continuance of the trial was necessary. The court held there was no substance to the allegations of bias and prejudice and, therefore, denied the motion.

With respect to Plaintiffs' motion for change of venue, the court again noted the motion was based on the alleged corruption and bias of the court. The court found there was no corruption and bias, and because there was no other basis for a change of venue, denied Plaintiffs' motion.

With respect to the motion to amend, the court found Plaintiffs were essentially seeking to resubmit the "second amended complaint" which was addressed in Magistrate Judge Ayers' original order, Magistrate's Report and Recommendation of December 3, 1991. The court noted Plaintiffs had argued that the proposed second amended complaint was never submitted to the court for its consideration either deliberately or via negligence of the clerk's office. The court found the

allegations of corruption and/or incompetence were without merit. The court noted Magistrate Ayers had received the proposed second amended compliant prior to his disposition of Plaintiffs' causes of action, and had specifically held the proposed second amended complaint failed to cure the deficiencies of the previous complaint. Further, the court noted the new second amended complaint failed to cure any of the deficiencies noted by Magistrate Williams in his ruling on a similar motion to amend.

With respect to Plaintiffs' motion to compel, the court found all interrogatories with the exception of one had either been fully complied with, or were properly objected to on the grounds they sought information outside the scope of relevant discovery. The court ordered the United States to respond to the interrogatories that had not been complied with and that were not subject to a valid objection.

4. On March 31, 1993, Magistrate Williams entered judgment in favor of the United States. *See* Defendants' Statement of Facts, Exh. PP. The judgment was based on Plaintiffs' request that the court enter an involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b), and the United States' motion for involuntary dismissal of Plaintiffs' amended complaint with prejudice.

against various federal employees in Case 91–0087; failed to timely furnish Plaintiffs with copies of the Local Rules and the CJRA plan; failed to provide Plaintiffs with a copy of a handbook outlining court procedures; failed to timely inform Plaintiffs they could file documents in Coeur d'Alene, Idaho; improperly processed Plaintiffs' subpoena for various names and addresses of federal employees; fraudulently removed or destroyed Plaintiffs' proposed amended complaint dated March 5, 1992; and fraudulently altered evidence and removed or destroyed Plaintiffs' motion to compel answers to interrogatories.

Count Three also contains specific allegations against the Federal Defendants:

(a) District Judges Ryan and Lodge are alleged to have promulgated policies which led to the alleged violations of Plaintiffs' constitutional rights;

(b) Magistrate Williams is alleged to have fraudulently removed or destroyed Plaintiffs' proposed second amended complaint; refused to permit Plaintiffs to schedule hearings; failed to rule on Plaintiffs' motions; accepted a fraudulent certification providing the Federal Defendants in Case 91–0087 were acting in the course and scope of their employment as federal employees; improperly stayed proceedings; fraudulently removed or destroyed Plaintiffs' exhibits in support of their motion for change of venue; fraudulently removed or destroyed Plaintiffs' identification and brief explanation of exhibits filed in support of Plaintiffs' motion for change of venue; fraudulently attempted to extort a favorable settlement in Case 91–0087; permitted Assistant United States Attorney Marc Haws to prepare a fraudulent judgment; promulgated policies which led to the violation of Plaintiffs' constitutional rights; and, refused to hold Deputy Clerks who allegedly tampered tapes accountable for such actions;

(c) Magistrate Ayers is alleged to have improperly stayed discovery; fraudulently removed or destroyed Plaintiffs' proposed second amended complaint dated October 31, 1991; refused to allow Plaintiffs to schedule hearings; refused to rule on Plaintiffs' motions; and, promulgated policies which led to the alleged violations of Plaintiffs' constitutional rights;

(d) Magistrate Boyle is alleged to have improperly stayed proceedings;

(e) Former District Court Clerk Clapp is alleged to have fraudulently ordered Plaintiffs to send proposed amendments to their original complaint for examination prior to filing;

(f) District Court Clerk Burke is alleged to have fraudulently removed or destroyed Plaintiffs' proposed second amended complaint and refused to allow Plaintiffs to schedule hearings;

(g) Deputy District Court Clerk Haberman is alleged to have fraudulently removed or destroyed Plaintiffs' demand for trial by jury;

(h) Deputy District Court Clerks Wade–Lawron, Worthen, and Sharp and Magistrate Williams' secretary Parker are alleged to have refused to permit Plaintiffs to schedule hearings;

(i) Deputy District Court Clerk Latham is alleged to have fraudulently removed or destroyed Plaintiffs' proposed second amended complaint;

(j) Deputy District Court Clerk Sharp is also alleged to have fraudulently removed or destroyed Plaintiffs' exhibits in support of their motion for change of venue; and, fraudulently removed or destroyed Plaintiffs' identification and brief explanation of exhibits in support of Plaintiffs' motion for change of venue;

(k) Deputy District Court Clerk Dreps is alleged to have failed to timely send Plaintiffs' notice of appeal to the Ninth Circuit;

(1) Deputy District Court Clerks/Court Reporters Dunbar, Keck, and Cook are alleged to have doctored tapes of hearings; and (m) Darrell Early, Magistrate Williams' law clerk, is alleged to have refused to permit Plaintiffs to schedule hearings, and to have attempted to extort, through coercion, a favorable settlement in Case 91–0087. Amended Complaint, at 14–19.

### Count Four

Count Four alleges claims against U.S. Attorney Defendants. These defendants are alleged to have submitted a fraudulent declaration of Kenneth E. Cohen; lacked authority to advocate defenses on behalf of the United States; submitted fraudulent certifications stating individual federal defendants were acting in the course and scope of their employment; failed to provide documentation required by 28 CFR §§ 15.2 or 50.15; conspired to deter, intimidate, threaten and prevent United States Forest Service ("USFS") employees from testifying on behalf of Plaintiffs; and mislead with unethical means the U.S. District Court in said civil action regarding the certification, and continued that unethical activity into a Ninth Circuit Case, No. 93–35875, 1994 WL 534501. Amended Complaint, at 19–22.

Further, Count Four alleges AUSA Haws conspired with the Defendants named in Count Three, subpart Q, to alter evidence, and conspired with other Defendants to defame Plaintiffs. *Id.*

### Count Eleven

Count Eleven, in part, alleges AUSA Haws conspired with others to defame Plaintiffs. Amended Complaint, at 35–36.

### Count Twelve

Count Twelve alleges District Judge Lodge, Deputy District Court Clerk Sharp and the other Defendants named in Count Three conspired to have Judge Lodge named as presiding judge in the instant case. Amended Complaint, at 36.

Plaintiffs have also alleged that the Federal Defendants engaged in activities which harmed persons not parties to this action, including James Kevin Pratt and Vicki and Samuel Weaver. *Id.*

### III. Claims against State Defendants

In Counts One, Two, and Five through Ten of the Amended Complaint, Plaintiffs set forth the following claims against State Defendants:

### Count One

In Count One, Plaintiffs allege that State Defendants Quentin Harden, Eugene Marano, Marie Scott and Kathleen Hutter violated Plaintiff's rights to due process and equal protection in January 1990 when adjudicating *Halliday v. Samuels,* Idaho First Judicial District for Bonner County Small Claims, No. 5898–S ("*Halliday* case"). Amended Complaint at 10–11. Harden and Marano are judges for the Idaho First Judicial District; Scott and Hutter are, respectively, the clerk and the deputy clerk of the Bonner County Court in Idaho.

Plaintiffs allege that in the *Halliday* case, State Defendants Harden, Marano, Scott, and Hutter failed to properly record or transcribe the proceedings; abused their authority in prohibiting Plaintiffs from making a video or audio recording of the proceedings; failed to compile written records for appeal; failed to maintain exhibits, and; failed to inform Plaintiffs in writing of the court's decision and their subsequent right to appeal. Additionally, Plaintiffs contend that Judge Marano exceeded his authority in requiring Plaintiffs to pay the judgment on the day of the proceeding.

### Count Two

In Count Two, Plaintiffs allege that State Defendants Harden, Scott, and Hutter conspired to deprive Plaintiffs of their due process and equal protection rights in July 1990, while adjudicating *Samuels v. Heil,* Idaho First Judicial District for Bonner County Small Claims, No. 6047–H ("*Heil* case"). Amended Complaint at 12–14.

Similar to the allegations in Count One, Plaintiffs allege that in the *Heil* case, State Defendants Harden, Scott, and Hutter failed to properly record or transcribe the proceedings; abused their authority in prohibiting Plaintiffs from making a video or audio recording of the proceedings; failed to compile written records for appeal; failed to maintain exhibits; failed to inform Plaintiffs in writing of the court's decision and their subsequent right to appeal. Additionally, Plaintiffs contend that these Defendants conspired with deputies of Bonner County to (a) fabricate

criminal charges against Plaintiffs and (b) delay service of summons to opposing party.

Furthermore, Judge Harden is alleged to have (a) conspired with Scott, Hutter, and the opposing party to bar Plaintiffs' claims under the doctrines of res judicata and collateral estoppel; and (b) promulgated policies which led to the alleged violations of Plaintiffs' constitutional rights.

### Count Five

In Count Five, Plaintiffs claim that State Defendants Michaud, Scott, Hutter, Roberts, and Savage conspired to predetermine the outcome of their case, *Samuels v. Bonner Co. Records*, No. 92–00085 in the First Judicial District Court—Bonner County (*"Bonner County* case") adjudicated on or about February 1992. Amended Complaint, at 22.

Plaintiffs allege that said Defendants did not properly log payment of filing fees and failed to provide them with a receipt. *Id.*

Count Five also contains specific allegations against State Defendants Michaud and Hutter:

(a) District Judge Michaud allegedly allowed perjured and scripted testimony; and refused to provide an order denying Plaintiffs' request for record;

(b) Deputy Clerk Hutter allegedly doctored and omitted part of the record, and refused to certify the transcript tapes as comprehensive.

### Count Six

Count Six of Plaintiffs' Amended Complaint names State Defendant Michael Oths ("Oths"). Amended Complaint, at 24. Oths is counsel to the Idaho State Bar. Plaintiffs allege that Oths violated their Due Process and Equal Protection rights by: (a) improperly processing Plaintiffs' 1990 legal misconduct complaint with the Idaho State Bar Association; (b) refusing to provide Plaintiffs with Idaho State Bar Desk Book; and (c) attempting to fraudulently induce Plaintiffs to settle their claim. Amended Complaint, at 24–26.

### Count Seven

Count Seven charges State Defendants Robert Bakes, Larry Boyle, Charles McDevitt, Stephen Bistline, Byron Johnson, Frederick Lyons, and Carl Bianchi with misconduct relating to Plaintiffs' appeal in *Samuels v. Oths,* Idaho Supreme Court, No. 92–19783 ("Oths case"). McDevitt is the Chief Justice of the Idaho Supreme Court; Johnson is an Idaho Supreme Court Justice; Bakes, Boyle, and Bistline are former Idaho Supreme Court Justices; Lyons is the Clerk of the Court for the Idaho Supreme Court; and Bianchi is the former Director of the Administrative Office for the Idaho Supreme Court. Here, Plaintiffs allege that State Defendants Bakes, Boyle, McDevitt, Bistline, Johnson, Lyons, and Bianchi conspired beginning in February 1992 to violate Plaintiffs' Due Process and Equal Protection rights by altering and changing the date of filing of Plaintiffs' Reply to Response to Petition for Writ of Mandamus; removing said document from the record; neglecting to file an appealable order for the denial of the Writ; and accepting fraudulent documentation from Oths. Amended Complaint, at 26–27.

Plaintiffs also make a separate allegation against Clerk Lyons for failing to inform Plaintiffs about appellate procedure.

### Count Eight

In Count Eight, Plaintiffs claim that State Defendants Claudia Kopper, Robert Huntley Jr., Kathryn Sticklen, Bruce Smith, and Linnae Costello conspired to predetermine the outcome and prevented Plaintiffs from appealing the decision of an October 1992 Idaho State Bar Professional Conduct Board Hearing and Review (Case 92–008A) ("1992 disciplinary hearing"). Amended Complaint, at 27–30. This conspiracy allegedly stretches back to April 1992. Kopper is the Clerk of the Idaho State Bar Professional Conduct Board; Huntley is the Chair of the Idaho State Bar Professional Conduct Board; Sticklen, Smith, and Costello are members of the Idaho State Bar Professional Conduct Board.

Plaintiffs allege that Kopper, Huntley, Sticklen, Smith and Costello violated their constitutional rights by accepting fraudulent

documents; failing to record the proceedings; failing to render a timely decision; conducting a fraudulent "appeal" hearing; and threatening Plaintiffs with sanctions for discussing the outcome. *Id.*

### Count Nine

In Count Nine, Plaintiffs target State Defendants Michaud, Hutter, Scott, Roberts, and Savage for conspiring to predetermine the outcome of *Samuels v. Hepworth,* First Judicial District for Bonner County Case No. 92–00264 ("*Hepworth* case"). Plaintiffs allege that the Bonner County deputy clerks and Judge Michaud mishandled their civil complaint against the law firm of Hepworth, Nungester & Lezamiz, Inc. ("Hepworth firm"), in March 1992. *Id.* at 30–33.

Count Five also contains the following allegations against individual State Defendants:

(a) District Judge Michaud failed to set a trial date in the *Hepworth* case until the instant complaint was filed; instructed court clerks not to calendar pretrial motions; failed to recuse himself; concealed all relevant facts; failed to hold court staff accountable for their actions in this case; required Plaintiff Charles Samuel to submit to questioning regarding his mental competency; refused to allow amendments to Plaintiffs' complaint; and refused to let Plaintiffs exhibit documents at proceedings;

(b) District Court Clerk Hutter failed to accurately label tapes sent to Plaintiffs;

(c) District Court Clerk Savage issued incorrect subpoenas in July 1992;

---

**5.** Section 1981 protects the rights of all persons, regardless of race, "to make and enforce contracts." 42 U.S.C. § 1981; *see Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989). The Supreme Court in *Patterson v. McLean Credit Union* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), recently clarified the scope of section 1981, confirming that it is not a "general proscription of racial discrimination in all aspects of contractual relations," rather it is limited to protecting (1) the right to make contracts and (2) the right to enforce contracts.

Here, Plaintiffs do not allege race-based discrimination interfering with their rights to make and enforce contracts. Accordingly, the court finds no basis for a Section 1981 violation in this case.

(d) Deputy District Court Clerk Roberts failed to legibly print the date·on certified mail receipts;

(e) Hutter, Scott, Savage, and Roberts failed to file Plaintiffs' documents, and covered up fraudulent conduct of unnamed employees of Bonner County.

### Count Ten

Finally, in Count Ten, Plaintiffs allege that State Defendants Michaud, Scott, and Haman fraudulently restricted Plaintiffs access to law materials by raising the price of photocopies in the Bonner County Law Library from 5 cents to 50 cents per copy and by restricting access of certain books to court personnel only. Amended Complaint at 33–35. Haman is a state judge for the Idaho First Judicial District.

### DISCUSSION

Federal Defendants move to dismiss the complaint, or for summary judgment. In a separate motion, they also request sanctions. State Defendants submit their own motion to dismiss Plaintiffs' claims and for attorneys' fees.

 As a preliminary matter, the court liberally construes Plaintiffs' complaint as a *Bivens* action as it relates to Federal Defendants and as a § 1983 action as it relates to State Defendants. Although, Plaintiffs allege that "[t]his action is brought against all Defendants pursuant to 42 U.S.C. § 1981 *et seq./Bivens* for conspiracy," the court finds that Plaintiffs' Amended Complaint does not implicate rights protected by 42 U.S.C. §§ 1981 or 1985.[5] Furthermore, the court

---

Plaintiff also claims a violation of 42 U.S.C. § 1985. To state a cause of action under § 1985(3), Plaintiff must show 1) a conspiracy, 2) to deprive any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, 3) an act by one of the conspirators in furtherance of the conspiracy, and 4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Gillespie v. Civiletti,* 629 F.2d 637, 641 (9th Cir.1980).

Because section 1985 derives from the Thirteenth Amendment, a plaintiff must also allege "invidiously discriminatory, racial or class-based animus." *Caldeira v. County of Kauai,* 866 F.2d 1175, 1182 (9th Cir.1989); *Gillespie,* 629 F.2d at

summarily dismisses causes of action asserted on behalf of non-parties to this Amended Complaint. The court finds that Plaintiffs have no standing to assert claims on behalf of James Kevin Pratt, Vicki and Samuel Weaver, or other USFS employees in North Idaho.

## FEDERAL DEFENDANTS' MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

Federal Defendants move this court to dismiss, or for summary judgment on the ground that Plaintiffs have failed to state a claim upon which relief can be granted. Federal Defendants specifically claim that (a) Plaintiffs failed to comply with Rule 8(a) and 9(b) of the Federal Rules of Civil Procedure in drafting their Amended Complaint, (b) Plaintiffs' claims are barred by the doctrines of absolute and qualified immunity (c) Plaintiffs' complaint is barred by the doctrine of collateral estoppel, (d) 28 U.S.C. § 2679(b)(1) precludes Plaintiffs' common law tort claims, and (e) Plaintiffs lack factual support for their allegations.

To the extent that facts outside the immediate pleadings are necessary for the court's decision in this matter, the court will treat the Federal Defendants' motion as a motion for summary judgment pursuant to the provisions of Rules 12(b) and 56 of the Federal Rules of Civil Procedure. Such facts and all inferences which may be reasonably drawn therefrom are viewed in the light most favorable to the Plaintiffs.

### I. Insufficient Pleadings

Federal Defendants contend that Plaintiffs' Amended Complaint should be dismissed for insufficient pleading. They argue that Plaintiffs' Amended Complaint does not meet the specificity requirements of Fed. R.Civ.P. 8(a) and 9(b). Specifically, Federal Defendants argue that Plaintiffs do not adequately plead: (a) proof of a constitutional violation necessary for a *Bivens* action; (b) specific facts supporting the existence of an alleged conspiracy; (c) intentional depriva-

tion as required for due process claims; (d) class membership for the purposes of an equal protection claim; and (e) a defamatory statement, or an ensuing loss of property or liberty in conjunction with their defamation claim. The court examines each of these arguments in turn.

### A. *Bivens Action*

Federal Defendants argue that Plaintiffs fail to show the requisite proof of a constitutional violation to sustain a *Bivens* action. *See Siegert v. Gilley*, 500 U.S. 226, 231–234, 111 S.Ct. 1789, 1792–1794, 114 L.Ed.2d 277 (1991) (*Bivens* action requires proof of a constitutional violation). They contend that common law tort claims against public officials and conclusory allegations of official participation in civil rights violations are insufficient for a *Bivens*-type action. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.1992).

In opposition, Plaintiffs contend that the Federal Defendants' participation in the conspiracy to deprive them of their First, Fourth, Fifth, and Fourteenth Amendment rights is sufficient to maintain an action under § 1983 and *Bivens*. *See* Plaintiffs' Objections to Federal Defendants' Motion to Dismiss, at 6–7.

In order to hold Federal Defendants liable under *Bivens* or 42 U.S.C. § 1983, Plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the constitution or the laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir.1988). A person deprives another of a constitutional right, within the meaning of *Bivens*, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation complained of. *Id.* at 633; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). Further:

Complaint does not state a 42 U.S.C. § 1985 claim here. *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1519 (9th Cir.1987).

641. Plaintiffs do not allege any invidiously discriminatory, racial or class-based animus. Accordingly, the court finds that the Amended

"[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.... Sweeping conclusory allegations will not suffice to prevent summary judgment. The [plaintiff] must set forth specific facts as to each individual defendant's deliberate indifference."

*Leer,* 844 F.2d at 633–34.

■ Plaintiffs generally allege a conspiracy to predetermine the outcome of Case 91–0087. *See* Amended Complaint, at 14–15. They also allege that: the Federal Judges refused to schedule hearings, failed to rule on Plaintiffs' motions, removed and destroyed exhibits, and promulgated policies which led to the alleged violations of Plaintiffs' constitutional rights; the Federal Clerk Defendants misdirected Plaintiffs' inquiries, improperly processed Plaintiffs' submissions to the court, tampered with the record, and doctored tapes of the proceedings; and the U.S. Attorney Defendants submitted fraudulent documents to the court, prevented witnesses from testifying, and misled the court. *Id.* at 14–22.

Despite their multiple allegations, Plaintiffs' claims fail to show a cognizable *Bivens* claim. Plaintiffs do not allege any facts demonstrating a constitutional violation as they are required to do in defeating a summary judgment motion. Plaintiffs' broad and conclusory allegations fail to establish a nexus between their alleged grievances against Federal Defendants and a deprivation of their constitutional rights. Under *Leer,* sweeping conclusory allegations will not suffice to prevent summary judgment. 844 F.2d at 633–34. Accordingly, the court grants Federal Defendants' Motion for Summary Judgment as to Plaintiffs' *Bivens* claims.

### B. *Conspiracy Allegations*

Similarly, Federal Defendants maintain that Plaintiffs' failure to allege specific facts supporting their conspiracy theory is fatal to their conspiracy claims. *See Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992). Federal Defendants contend

that conclusory allegations of fraud are also insufficient to meet the requirement for Fed. R.Civ.P. 9(b).

In contrast, Plaintiffs contend that conspiracy actions may be maintained under § 1983 and *Bivens* without regard to persons doing the particular act. *See Shepard v. Byrd,* 581 F.Supp. 1374 (D.C.Ga.1984). Plaintiffs argue that a conspiracy to cover up and conceal violations of the law, as alleged in this case, is actionable. *See Hampton v. Hanrahan,* 600 F.2d 600, 602 (7th Cir.1979).

■ To have an actionable conspiracy claim under *Bivens,* Plaintiffs must establish (1) the existence of an express or implied agreement among the defendants to deprive them of their constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. *Ting v. United States,* 927 F.2d 1504, 1512 (9th Cir.1991). "To state a claim for conspiracy to violate one's constitutional rights [ ], the plaintiff[s] must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989).

■ Even though allegations of conspiracy pervade the Amended Complaint, the court focuses here on the conspiracies alleged in the four counts directed against Federal Defendants (Counts Three, Four, Eleven, and Twelve) to illustrate that the conspiracy claims are not actionable. In Count Three, Plaintiffs allege that Federal Defendants deprived them of due process and equal protection by agreeing in advance to rule against Plaintiffs in this case. Amended Complaint, at 14. Count Four alleges a conspiracy among the U.S. Attorney Defendants to submit false documents, coerce witnesses, and mislead the court in their presentation of Case 91–0087. *Id.* at 19–22. Count Eleven alleges a conspiracy spearheaded by Haws to defame Plaintiffs. *Id.* at 35–36. Count Twelve alleges a conspiracy to have Judge Lodge preside over this case. *Id.* at 36.

An obvious flaw common to all of the conspiracy allegations in Plaintiffs' Amended Complaint is the lack of evidence demonstrating agreement among the named Federal Defendants. Plaintiffs' claims in the

Amended Complaint are premised on conclusory allegations. Plaintiffs have not, and the court finds that they cannot, allege any facts that evidence either an explicit or implied agreement among the Defendants. Even assuming Plaintiffs' allegations of individual misconduct are true, as the court must do on a motion for summary judgment, there is insufficient evidence that the Defendants "conspired" against Plaintiffs so as to deprive them of their civil rights. Accordingly, the court DISMISSES Plaintiffs' conspiracy claims against Federal Defendants.

### C. Due Process Claims

 Federal Defendants further contend that Plaintiffs' claims of due process violations must be dismissed for failure to show an intentional deprivation. According to Federal Defendants, a showing of mere negligence on the part of federal officials is insufficient; Plaintiffs must show malicious intent or deliberate indifference for a cognizable due process claim. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir.1989) (Plaintiffs must show that, at a minimum, defendants acted with deliberate indifference to their rights). In the Ninth Circuit, Plaintiffs must show that the state official acted with recklessness or gross negligence in order to state a cognizable § 1983 claim.[6] *See Wood,* 879 F.2d at 588.

In *Daniels,* the Supreme Court held that mere negligence or lack of due care by state officials does not trigger liability under § 1983. 474 U.S. at 332, 106 S.Ct. at 665. Simple torts do not rise to the level of a constitutional violation simply because a state official is involved. The Supreme Court noted that the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Id.* (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

 Here Plaintiffs do not show that Federal Defendants acted with malicious intent or deliberate indifference. In their Amended Complaint, Plaintiffs allege that Federal Defendants acted "willfully, wantonly, maliciously ... and with the specific intent" to deprive Plaintiffs and others of due process of the law. Amended Complaint, at 14, 19, 35, 36. The court finds here that Plaintiffs' allegations ring hollow. Simple repetition of allegations do not make them true. And the mere occurrence of an untoward event does not give rise to a due process violation or to a conspiracy; Plaintiffs must demonstrate unlawful intent. Here, Plaintiffs fail to provide factual support that creates an inference of or tends to prove malicious intent or deliberate indifference.

Even under a liberal interpretation of Plaintiffs' *pro se* complaint, "vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992)(quoting *Ivey v. Board of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982)). Plaintiffs' conclusory allegations of malice and specific intent are insufficient to make a cognizable due process claim under § 1983. Accordingly, the court DISMISSES Plaintiffs' due process claims.

### D. Equal Protection Claims

Federal Defendants argue that Plaintiffs do not allege a cognizable equal protection claim because Plaintiffs are not members of a protected class. According to Federal Defendants, the Fourteenth Amendment only applies to discriminatory treatment based on class membership; it cannot be used to redress wrongs against the individual, as alleged in this case. *See Robinson* v. *Long,* 1994 WL 112260 (N.D.Ill.1994). The court agrees.

---

**6.** Recklessness or gross negligence is widely accepted among the various circuits as the standard for § 1983 claims; none has held that only intentional misconduct will suffice. *See, e.g., Taylor v. Ledbetter,* 818 F.2d 791, 793 (11th Cir. 1987) (en banc) (gross negligence or deliberate indifference); *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 199–200 (6th Cir.1987) (gross negligence); *White v. Rochford,* 592 F.2d 381, 385 (7th Cir.1979) (gross negligence or reckless disregard).

Equal protection demands that States eliminate unfair disparities between classes of individuals. *Pennsylvania v. Finley,* 481 U.S. 551, 568, 107 S.Ct. 1990, 2000, 95 L.Ed.2d 539 (1987). "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of membership in a particular class, not merely that he was treated unfairly as an individual." *Huebschen v. Dep't of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983); *see also Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (The decisionmaker must have selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group).

This court finds the Seventh Circuit's reasoning in *Huebschen* persuasive. Here, Plaintiffs simply maintain that the defendants deprived them of equal protection under the law. They do not, and the court finds that they cannot, allege discrimination on the basis of class membership.

Furthermore, their general allegations that District Judges Ryan and Lodge promulgated policies depriving them of their constitutional rights also fail to state a claim upon which relief can be granted. Plaintiffs do not prove that Federal Defendants' actions deprived them of a fundamental right which would merit strict scrutiny. As Federal Defendants' policies and actions in this case seem rationally related to the administration of justice and the disposition of judicial proceedings, the court finds no equal protection violation in this case. *See Yao v. INS,* 2 F.3d 317, 321 (9th Cir.1993). Accordingly, the court DISMISSES Plaintiffs' equal protection claims.

### E. *Defamation Claim*

Federal Defendants move the court to dismiss the defamation claims because Plaintiffs fail to plead the requisite elements for such a claim. In brief, Federal Defendants contend that Plaintiffs fail to identify the defamatory statements, *Schulze v. Coykendall,* 218 Kan. 653, 545 P.2d 392, 396 (1976), or allege loss of a recognizable property or liberty interest resulting from the defamatory action, *Cooper*

*v. Dupnik,* 924 F.2d 1520, 1532 (9th Cir. 1991). Without these elements, Federal Defendants argue, Plaintiffs' defamation action must fail.

Injury to reputation alone does not present an actionable claim under § 1983. *Paul v. Davis,* 424 U.S. 693, 703, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). "To state a claim for defamation under § 1983, a plaintiff must allege loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation." *Cooper,* 924 F.2d at 1532; *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 777–78 (9th Cir.1982). Plaintiffs must meet the heightened burden of the "stigma-plus" test: in addition to demonstrating injury to reputation, Plaintiffs must also show the denial of a right specifically secured by the Bill of Rights or the denial of a state-created property or liberty interest such that the Fourteenth Amendment is violated. *Cooper,* 924 F.2d at 1532 n. 22.

In Counts Four and Eleven, Plaintiffs allege that Assistant United States Attorney ("AUSA") Haws defamed Plaintiffs. Plaintiffs state that AUSA Haws conspired with Defendants Evan "Chip" Roos, Todd Foster and the Spokesman–Review Newspaper to "fabricate and make fraudulent representations of alleged facts that were then circulated in print, when all Defendants, including Haws, Roos, Foster and Spokesman–Review Newspaper knew said fabricated and fraudulent representations to be false." Plaintiffs' Amended Complaint, at 21. Plaintiffs do not, however, identify the alleged defamatory statements nor do they state that the alleged defamation resulted in the loss of a recognizable liberty or property interest. The court finds that Plaintiffs fail to satisfy the stigma-plus test, because even assuming that the alleged defamatory actions took place as Plaintiffs suggest, they do not appear to directly affect Plaintiffs' rights or status under the law. *See Cooper,* 924 F.2d at 1532. In this case, Plaintiffs do not satisfy either prong of the stigma-plus test: they do not show that the state defamed them, nor that some constitutional harm resulted. Accordingly, the court DISMISSES Plaintiffs'

defamation claims in Counts Four and Eleven against Federal Defendants.

## II. *Absolute and Qualified Immunity*

As an alternative basis for dismissing Plaintiffs' Amended Complaint, Federal Defendants maintain that Plaintiffs' claims are barred by the doctrines of absolute and qualified immunity. In particular, Federal Defendants invoke the doctrines of absolute and qualified judicial immunity on behalf of the Federal Judges, absolute quasi-judicial immunity for the U.S. Attorney Defendants, and both absolute quasi-judicial immunity and qualified immunity for the Federal Clerk Office Defendants. The court will examine the immunity issue for each of these groups below.

### A. *Absolute Judicial Immunity*

The Supreme Court has held that individuals performing certain governmental functions have absolute immunity from liability under § 1983. *Nixon v. Fitzgerald*, 457 U.S. 731, 751–752, 102 S.Ct. 2690, 2702, 73 L.Ed.2d 349 (1982). Whether absolute immunity is available to an official does not depend on the official's job title or agency; the focus is on the function that the official was performing when taking the actions that provoked the law suit. *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1412 (9th Cir.1983); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir.1984). The Supreme Court has recognized absolute immunity for those performing judicial, legislative, and prosecutorial functions. *Nixon*, 457 U.S. at 745, 102 S.Ct. at 2698–2699. Absolute immunity is accorded to these functions so that the decision-making process is not hampered by a fear of lawsuits. *Id.*

### 1. Judges

Federal Defendants claim that the doctrine of absolute immunity cloaks the Federal Judges from civil liability for their judicial acts in this case. *See Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir.1987); *Ashelman v. Pope*, 793 F.2d 1072,

1075 (9th Cir.1986) (en banc) ("*Ashelman II*").

Plaintiffs contend that Federal Defendants acted "absent jurisdiction, [ ] without authority, and outside official capacity" in conspiring and "agreeing in advance to rule against Plaintiffs and predetermine the outcome of cases in the State of Idaho." Plaintiffs' Objection to Federal Defendants' Motion to Dismiss, at 17. Plaintiffs cite *Rankin v. Howard*, 633 F.2d 844 (9th Cir.1980), *Beard v. Udall*, 648 F.2d 1264 (9th Cir.1981) and *Ashelman v. Pope*, 769 F.2d 1360 (9th Cir.1985) ("*Ashelman I*") to show that a prior agreement by a judge to decide a case in favor of one party is not a judicial act and is not subject to immunity. *Id.*

Plaintiffs' reliance on these cases is misplaced; the holdings in *Rankin, Beard,* and *Ashelman I* were expressly overruled in *Ashelman II*, 793 F.2d at 1077–78. Moreover, judges are accorded absolute immunity to suits for monetary damages for their judicial acts. *Nixon*, 457 U.S. at 744, 102 S.Ct. at 2698. It is well settled that "judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official functions." *Partington v. Gedan*, 961 F.2d 852, 866 (9th Cir.1992) (quoting *Ashelman II*, 793 F.2d at 1075). "A judge is not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978); *Mullis*, 828 F.2d at 1388. The scope of absolute immunity is broadly construed to ensure independent and disinterested judicial and prosecutorial decisionmaking. *Ashelman II*, 793 F.2d at 1078.

There is one exception to the doctrine of absolute judicial immunity: absolute immunity is not available in cases where judges act in the clear absence of *all* subject matter jurisdiction. *See Mullis*, 828 F.2d at 1389. Judicial acts that *exceed* proper jurisdiction, however, still fall within the rubric of absolute immunity. *Id.* There is a notable difference in exceeding proper jurisdiction

and acting in a clear absence of subject matter jurisdiction.[7]

■ In Case 91–0087, Plaintiffs had filed a complaint in federal court requesting relief under a federal statute, 28 U.S.C. § 1346(b). Federal Defendants' Statement of Facts, Exh. A. The parties consented to proceed before a magistrate judge and the case was properly reassigned.[8] *Id.*, Exh. C. Local Rule 72.1(d)(1) and 28 U.S.C. § 636(b)(1)(A) establishes further review of magistrate orders by the district court. As such, the court finds that there is absolutely no merit to Plaintiffs' claim that the Federal Judges lacked subject matter jurisdiction in the underlying case.

Additionally, the above-named judges, as part of their official duties, presided over court hearings and issued orders relating to the proceedings. Rulings on motions, witnesses, recusals, hearing dates, stay of proceedings, certification of employees, preparation of orders, and settlement negotiations are all judicial acts within the ambit of absolute immunity; all of these acts require judicial discretion and are part of the Federal Judges' official conduct. Therefore, the court concludes that the doctrine of absolute immunity bars Plaintiffs' claims of impropriety in the procedures and rulings for Case 91–0087.

■ The doctrine of absolute immunity also protects the judges from allegations of conspiracy. *Ashelman II*, 793 F.2d at 1078. In *Ashelman II*, the court held that while a conspiracy to predetermine the outcome of judicial proceedings is clearly improper, it does not pierce the immunity extended to judges and prosecutors. *Id.* Thus, the court finds that the Federal Judges are not liable for Plaintiffs' allegations of improper conduct in the handling of Case 91–0087.

■ Additionally, the court recognizes that these Judges are eligible for qualified immunity for any administrative acts that are not protected by the doctrine of absolute judicial immunity. *See* Qualified Immunity, Part C, *infra.* Plaintiffs allege administrative misconduct in the upkeep of the files and the exhibits, and in the failure to hold Deputy Clerks accountable. Amended Complaint, at 14–19. Plaintiffs' Amended Complaint does not allege sufficient facts demonstrating constitutional deprivation or unlawful intent to defeat the qualified immunity defense. *See* Part I, *supra.* Accordingly, the court DISMISSES Plaintiffs' claims against District Judges Ryan and Lodge, Magistrates Williams and Boyle, and Former Magistrate Ayers based on the doctrines of absolute judicial immunity and qualified immunity.

### 2. Attorneys Representing the Government

Federal Defendants contend that claims against the U.S. Attorney Defendants, likewise, are barred by the doctrine of absolute immunity. Federal Defendants argue that, like judges, attorneys representing the government in civil litigation are also afforded absolute immunity for their official conduct. *Fry v. Melaragno,* 939 F.2d 832, 838 (9th Cir.1991) (IRS attorney); *Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–2916, 57 L.Ed.2d 895 (1978) (agency attorney). The court agrees.

■ In the Ninth Circuit, attorneys representing the government in civil litigation are entitled to absolute immunity for their official conduct during adjudication of cases against the government. *Fry,* 939 F.2d at 838. This rule is derived from a well-established common law rule that affords absolute

---

**7.** The Supreme Court has illustrated the distinction between an act in the clear absence of all jurisdiction and an act in excess of jurisdiction with this example:

> If a probate judge, with jurisdiction over wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be

acting in excess of his jurisdiction and would be immune.

*Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7.

**8.** Local Rule 72.1(a)(6) and 28 U.S.C. § 636(c) provide for magistrates to conduct any and all proceedings in a civil case where the parties have consented to trial by the magistrate judge and the court reassigns the case upon review by a district judge.

immunity to prosecutors.[9] The purpose behind absolute immunity is to "free the judicial process from the harassment and intimidation associated with litigation." *See id.* at 837 (citations omitted). The desire to promote independent, unhampered judicial decision-making underlying prosecutorial immunity also applies to attorneys representing the government in civil litigation.

In *Fry,* the Ninth Circuit extended absolute immunity to IRS attorneys representing the government in tax litigation. *Id.* at 836. Especially persuasive to the Ninth Circuit in granting this immunity was the fact that the plaintiffs' allegations were based solely upon the attorneys' official conduct in representing the government.[10] *Id.* (Doctrine of absolute immunity protects the defendant attorneys "if their allegedly improper conduct was intimately associated with the judicial phases" of the tax litigation.).

█ Here, Plaintiffs allege attorney misconduct in the acceptance of witness testimony, and, the authenticity of declarations, certifications, and documentation submitted in the case. Plaintiffs also allege that Haws conspired with others to defame Plaintiffs by making false accusations in public; such allegations allegedly subjected Plaintiffs to shame and ridicule in the community. Amended Complaint, at 21, 35. The court finds that these allegations against the U.S. Attorney Defendants stem from the attorneys' conduct during the case. Plaintiffs' allegations against these government attorneys in Counts Four and Eleven are "intimately associated" with the judicial process in Case 91–0087. *See Fry,* 939 F.2d at 838. Public policy mandates that the U.S. Attorney Defendants be allowed to aggressively defend the United States without fear of personal liability. Therefore, the court finds the doctrine of absolute immunity an appropriate shield and DISMISSES Plaintiffs' claims against the U.S. Attorney Defendants.

### B. *Absolute Quasi–Judicial Immunity*

Federal Defendants further contend that Plaintiffs' claims against Federal Clerk Defendants are barred by the doctrine of absolute quasi-judicial immunity or in the alternative, by qualified immunity. As their primary argument, Federal Defendants maintain that the court clerks implicated here have absolute quasi-judicial immunity in performing tasks that are an integral part of the judicial process. *Mullis,* 828 F.2d at 1390.

In contrast, Plaintiffs seem to argue that the doctrine of absolute quasi-judicial immunity does not apply here because the alleged misconduct is not a matter of judicial discretion. *See Gregory v. Thompson,* 500 F.2d 59, 63 (9th Cir.1974); *McCray v. State of Maryland,* 456 F.2d 1, 4 (4th Cir.1972). Plaintiffs further argue that the doctrine of absolute quasi-judicial immunity is not available because the Federal Defendants acted in bad faith. *See* Plaintiffs' Objections to Federal Defendants' Motion to Dismiss, at 20–21.

Traditionally in the Ninth Circuit, "[c]ourt clerks have enjoyed absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis,* 828 F.2d at 1390; *Sharma v. Stevas,* 790 F.2d 1486, 1486 (9th Cir.1986); *Morrison v. Jones,* 607 F.2d 1269, 1273 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); *Shipp v. Todd,* 568 F.2d 133, 134 (9th Cir.1978); *Stewart v. Minnick,* 409 F.2d 826, 826 (9th Cir.1969). However, in recent years, the Supreme Court has distinguished judicial acts to which absolute immunity necessarily attaches and administrative acts for which such immunity is not

---

**9.** In *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 992–993, 47 L.Ed.2d 128 (1976), the Supreme Court expressed concern that fear of potential liability would undermine a prosecutor's performance of his duties by forcing him to consider his own potential liability when making prosecutorial decisions. Additionally, the Supreme Court was wary of "a virtual retrial of the criminal offense in a new forum" and that such proceedings would undermine the vigorous enforcement of the law. *Id.,* at 425–26, 96 S.Ct. at 992–93; *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 270 n. 4, 113 S.Ct. 2606, 2614 n. 4, 125 L.Ed.2d 209 (1993).

**10.** The court held that absolute immunity applied to the government attorneys' initiation and handling of civil litigation in both state and federal court. *Fry,* 939 F.2d at 836.

available. The "touchstone" for the doctrine's applicability has been the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435–436, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (quoting *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)).

"When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because, they, too, exercise a discretionary judgment as part of their function." *Id.* (citations and quotations omitted). Administrative and ministerial acts are not accorded absolute quasi-judicial immunity. *Id.; see also Chenh v. Logan,* 1995 WL 530253, *2 (N.D.Ill.1995) (clerk and deputy clerk not entitled to quasi-judicial immunity for ministerial functions such as issuance of court orders pertaining to court rulings).

Plaintiffs allege a myriad of claims against the clerks. *See* Amended Complaint, at 14–19, 36. The claims basically fall into two categories. One set of claims involves more generalized allegations of conspiracy. The other set of claims involve fraud in the upkeep of the files and the record. The court examines each in turn.

Federal Clerk Defendants are implicated in Plaintiffs' general allegations of a conspiracy to deprive them of their due process and equal protection rights. Plaintiffs do not specify how the Federal Clerk Defendants are involved in this conspiracy. Nevertheless, the court finds that insofar as the claims against the Federal Clerk Defendants involve judicial discretion, they are barred by the doctrine of absolute quasi-judicial immunity. Absolute quasi-judicial immunity also bars Plaintiffs' claim that Magistrate Williams' law clerk, Early, improperly attempted to coerce settlement because the court finds that alternative dispute resolution is a judge-like function. In sum, the court finds that all claims against the Federal Clerk Defendants requiring judicial discretion are necessarily precluded from suit by the doctrine of absolute quasi-judicial immunity.

As for the remaining allegations regarding the upkeep of files and exhibits, the court finds that absolute quasi-judicial immunity does not apply. Plaintiffs allege misconduct in the performance of clerical tasks such as filing documents, scheduling hearings, and transcribing proceedings from tape recordings. These duties are more administrative in nature, and generally do not require judicial discretion. As such, the court finds these actions are ministerial duties that fall outside the bounds of quasi-judicial immunity. *See Antoine,* 508 U.S. at 434–438, 113 S.Ct. at 2171–72 (court reporter's failure to produce a transcript of a federal criminal trial is not a discretionary act subject to the doctrine of absolute quasi-judicial immunity). According to *Antoine,* the court must analyze clerical functions such as filing, scheduling, and transcribing proceedings under the doctrine of qualified immunity.

### C. *Qualified Immunity*

The existence of qualified immunity is a question of law. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity "generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738). Since it grants immunity from suit, qualified immunity is intended to "permit courts expeditiously to weed out suits which fail the test without requiring the defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

■ There are essentially three basic inquiries to the qualified immunity test: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so clearly established as to alert a reasonable person to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991).

The Supreme Court has indicated that the right allegedly violated must be particularized:

[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

The Ninth Circuit expounded:

[T]he proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the official's] position could have objectively believed his actions to be proper.

*Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir.1992) (citations omitted).

■ A plaintiff who seeks damages for a violation of constitutional or statutory rights bears the initial burden of proving that the rights allegedly violated were clearly established at the time of the alleged misconduct. *Houghton*, 965 F.2d at 1534; *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–3021, 82 L.Ed.2d 139 (1984). A court must examine the universe of statutory or decisional law to determine whether the right allegedly violated was clearly established. *Elder v. Holloway*, 510 U.S. 510, 513–515, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994). Qualified immunity is thus a "protective" rule which "provides ample support to all but the most plainly incompetent or those who knowingly violate the law." *Burns*, 500 U.S. at 494–95, 111 S.Ct. at 1943–1944 (citation omitted).

Moreover, the Ninth Circuit has adopted a heightened pleading requirement for § 1983 and *Bivens* cases against individual officials in which (1) defendants are entitled to assert the qualified immunity defense, and (2) their knowledge or intent is an element of the constitutional tort. *Branch v. Tunnell*, 14 F.3d 449, 452 (9th Cir.1994) (*"Branch II"*).

[I]n order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.

*Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991) (*"Branch I"*).

■ In this case, Plaintiffs allege misconduct in Federal Clerk Defendants' filing of documents submitted to the court, maintaining exhibits, scheduling hearings, sending notices, and transcribing proceedings. Plaintiffs claim a violation of their due process and equal protection rights. After reviewing the available case and statutory authority, the court finds no indication that, Federal Clerk Defendants violated a clearly established federal right. While Plaintiffs have cited to the court cases which support a citizen's rights to meaningful access to the courts,[11] they have not shown that the alleged acts fall within the constitutional parameters of those rights.

---

11. Plaintiffs cite several cases including *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Boddie v. Connecticut*, 401 U.S. 371, 374, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971); *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983); and *Rheuark v. Shaw*, 628 F.2d 297, 303 n. 10 (5th Cir.1980) to demonstrate that access to the courts is protected by the due process clause.

Furthermore, Plaintiffs have not set forth evidence of unlawful intent in non-conclusory terms indicating that Clerk Defendants intended to violate Plaintiffs' constitutional rights. General allegations that Federal Defendants acted "willfully, wantonly, maliciously, fraudulently, negligently, systematically and with specific intent" do not save the Complaint from dismissal on summary judgment. Such bare allegations of improper purpose fail to meet the *Branch I* heightened pleading standard. *Branch I*, 937 F.2d at 1386. Accordingly, the court DISMISSES Plaintiffs' claims against Federal Clerk Defendants as barred by the doctrine of qualified immunity.

### D. Claims for Injunctive or Declaratory Relief

Plaintiffs claim that their request for injunctive relief survive the immunity doctrines. Plaintiffs cite *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) for the proposition that "judicial immunity is not a bar to prospective injunctive relief against judicial officers acting in their judicial capacity."

■■■ Federal Defendants argue that judicial immunity extends to declaratory, injunctive, and other equitable relief. *Mullis*, 828 F.2d at 1394. Additionally, they contend that the requirements for equitable relief are not present because Plaintiffs fail to show an inadequate remedy at law and a serious risk of irreparable harm. *Affeldt v. Carr*, 628 F.Supp. 1097 (N.D.Ohio 1985). The court again agrees.

[A] person who is alleged to have caused a deprivation of constitutional rights while acting under color of federal law can successfully assert judicial or quasi-judicial immunity from damages, that immunity also will bar declaratory and injunctive relief. The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory and other equitable relief.

*Mullis*, 828 F.2d at 1394. Furthermore, to petition the court for injunctive relief Plaintiffs must show inadequate remedy at law

and serious risk of irreparable harm. *Pulliam*, 466 U.S. at 537, 104 S.Ct. at 1978–1979.

In the Ninth Circuit, a party seeking injunctive relief must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in (the movant's) favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir.1993), *cert. denied*, 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994) (internal citations omitted) With respect to the injury requirement, "the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury.... A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir.1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

■■■ Here, Plaintiffs request injunctive or declaratory orders: (1) restraining Federal Defendants from engaging in "such future conduct and retaliatory acts" (presumably referring to the misconduct alleged in Case 91–0087); (2) requiring the Federal Judges to produce a handbook to assist *pro se* litigants; (3) requiring the Federal Judges to "hand over all evidence" regarding Case 91–0087; (4) requiring the Federal Judges to investigate the alleged improper surveillance of plaintiffs, and others, by the United States Forest Service; and (5) requiring AUSA Haws and other non-federal Defendants to publish a recantation of allegedly defamatory statements. Amended Complaint, at 39–44. In their request, Plaintiffs fail to show how a legal remedy or monetary damages would be inadequate. Additionally, the court finds no

serious risk of irreparable harm requiring injunctive relief here.

In short, Plaintiffs' prayer for relief fails to satisfy the requirements for injunctive or declaratory relief. *Pulliam,* 466 U.S. at 537, 104 S.Ct. at 1978 (inadequate remedy at law and serious risk of irreparable harm required for equitable relief); *Affeldt,* 628 F.Supp. at 1103 (same).

Concluding that Federal Defendants are shielded from liability by the immunity doctrines, the court DISMISSES all claims levied against Federal Defendants meant to redress alleged constitutional violations.

### III. Common Law Tort Claims

Insofar as the Amended Complaint alleges any common law tort claims, Federal Defendants seek to have them dismissed pursuant to the Federal Employees Liability Reform and Tort Compensation Act, codified in 28 U.S.C. § 2679(b)(1).

28 U.S.C. § 2679(b)(1) provides:

> The remedy against the United States provided by Section 1346(b) and 2672 of this title for injury and loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee, or the employee's estate, is precluded without regard to when the act or omission occurred.

This statute specifically provides that the right to sue the Government for injuries resulting from the "negligent or wrongful act or omission" of a federal employee is the only remedy available to the injured party, and acts as a bar to suits against individual feder-

al officers. 28 U.S.C. § 2679(b)(1). Subpart two specifically states, however, that a bar to suits "does not extend or apply to a civil action against an employee of the Government ... which is brought for a violation of the Constitution of the United States." *Id.*

■ Here, Plaintiffs allege mental, physical, and economical injury resulted from Federal Defendants' actions. Amended Complaint, at 39. The Amended Complaint requests damages in excess of $50,000 from each defendant. *Id.* at 44. The allegations of negligent or wrongful acts or omissions pertain to official acts. Each of the acts alleged were necessarily done within the scope of their employments as the Federal Defendants would not otherwise be authorized perform such functions as filing documents, scheduling hearing, admitting evidence, or ruling on motions. To the extent that Plaintiffs pleaded common law tort claims or other state causes of action, Federal Defendants are entitled to have the United States substituted as defendant in their place, and to have those claims dismissed against them as individuals. *See Green v. Hall,* 8 F.3d 695, 698 (9th Cir.1993), *cert. denied,* 513 U.S. 809, 115 S.Ct. 58, 130 L.Ed.2d 16 (1994). Therefore, under 28 U.S.C. § 2679(b)(1), the court DISMISSES Plaintiffs' common law tort claims against the individual Federal Defendants.[12]

### IV. Collateral Estoppel

Lastly, Federal Defendants argue collateral estoppel as an alternative basis for dismissing this action. Federal Defendants argue that, with the exception of the defamation allegations, Plaintiffs' claims against them arise out of alleged acts of misconduct that transpired during the Case 91–0087 proceedings. Federal Defendants maintain that the doctrine of collateral estoppel bars Plaintiffs' non-defamation claims here because these "misconduct" issues were raised and fully litigated in Case No. 91–0087.

---

**12.** To the extent that Plaintiffs have asserted constitutional tort claims, however, this statute does

not apply. *See* 28 U.S.C. § 2679(b)(2).

■ Under the federal standard, to foreclose re-litigation of an issue under collateral estoppel, three elements must be met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir.1993).

■ Here, the allegations of impropriety by the district court personnel were raised, litigated, appealed, and dismissed on appeal. *See* Federal Defendants' Statement of Facts, Exh. Q, HH, RR, SS, and YY. The district court and the Ninth Circuit found that Plaintiffs' *Bivens* violations and conspiracy claims against various government employees, judicial officers, and court personnel lacked merit.[13] *Id.* As these issues of misconduct have already been litigated and dismissed, the court finds that collateral estoppel provides an alternative basis for dismissing this action. Having carefully reviewed the entire record, including the compilation of the rec-

ord in Case 91–0087, the court finds no genuine issues of material fact remaining in this case. Accordingly, the court GRANTS Federal Defendants' Motion for Summary Judgment and DISMISSES the Amended Complaint as to the Federal Defendants.

## FEDERAL DEFENDANTS' MOTION FOR SANCTIONS

Contending that Plaintiffs' action against them violates Fed.R.Civ.P. 11(b), Federal Defendants move this court to sanction Plaintiffs. They argue that Plaintiffs' claims were presented for the purpose of harassment and are not supported or warranted by existing law. Federal Defendants request attorneys' fees and/or the entry of a vexatious litigant order.

> Fed.R.Civ.P. 11(b) provides:
>
> By presenting to the court . . . a pleading . . . an attorney or unrepresented party . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

---

**13.** In its December 2, 1991 Order, the district court reviewed Plaintiffs' allegations of visual, audio and personal surveillance, being falsely accused of stealing, inappropriate road permits, withholding of mail, supplying Plaintiff Charles F. Samuel faulty equipment for use in his work, trespassing on Plaintiffs' property, denial of schooling and other job-related rights of work, and discrimination against Plaintiffs by expelling Plaintiffs' son from Little League. The court dismissed all claims except tort claims brought for invasion of privacy and emotional distress as barred by the FTCA and the doctrine of sovereign immunity or for lack of jurisdiction. *See* Federal Defendants' Statement of Facts, Exhibit Q, at 5.

On October 16, 1992, the district court reviewed the same factual allegations that were previously dismissed by way of the December 2, 1991 Order in the form of a Motion to File an Amended Complaint and Join Additional Parties. The court denied leave to amend, on the ground that Plaintiffs' allegations of conspiracy, violations of *Bivens*, and of 42 U.S.C. §§ 1983, 1985, 1986 and 1988 would be subject to dismissal. *Id.*, Exhibit HH, at 4–13.

In its June 18, 1993 Order, the district court noted that "it was aware that Plaintiffs have repeatedly charged throughout the course of

these proceedings various members of the court's staff with tampering with evidence, tampering with recordings of hearings, deliberately hiding pleadings filed by the Plaintiffs and otherwise obstructing the Plaintiffs' access to the courts." *Id.*, Exhibit RR, at 6–7. The court dismissed all such allegations of fraudulent conduct by and bias amongst the judges and court personnel as meritless and spurious. *Id.*

Plaintiffs appealed the district court's orders and lodged numerous allegations of court misconduct. *Id.*, Exhibit SS. The allegations included failure to furnish local rules, accepting fraudulent notices, destruction of pleadings and exhibits, "tampering with and doctoring" portions of the record, failure to properly certify orders for appeal. *Id.*, Exhibit SS, at 3–4. The Ninth Circuit affirmed the district court's dismissal of Plaintiffs' action in Case 91–0087 and of Plaintiffs' allegations of misconduct by court personnel. *Id.*, Exhibit YY, at 2, 4. The Ninth Circuit found Plaintiffs' allegations of impropriety by district court personnel unsubstantiated and meritless. *Id.*

The record clearly demonstrates that the issues in Plaintiffs' Amended Complaint have been previously litigated.

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

■ Rule 11 sanctions may be imposed "if the [pleading] filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986).

■ Rule 11 imposes a duty on parties to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and "not interposed for any improper purpose." Before filing a complaint, a party has an "affirmative duty" to conduct reasonable inquiry into both the facts and the law asserted. *Lloyd v. Schlag,* 884 F.2d 409, 412 (9th Cir. 1989). If a violation is determined, sanctions must be imposed. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990) (en banc).

■ The Court in *Townsend* noted that sanctions must be imposed if either (a) the paper is filed for an improper purpose or (b) the paper is frivolous. 929 F.2d at 1362. The word "frivolous" is shorthand used to denote a filing that is both (i) baseless and

(ii) made without a reasonable and competent inquiry. *Id.* In determining whether a filing is baseless and whether an inquiry is reasonable, the Court looks to "all the circumstances of [the] case." *Id.* at 1364 (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990)).

■ Here, Plaintiffs have filed several virtually identical complaints, numerous motions, and a number of appeals on the same unsubstantiated conclusory factual allegations. Plaintiffs have entangled multiple defendants in litigation based on these unfounded allegations. Moreover, Plaintiffs have resubmitted many of the exact same claims made in Case 91–0087 for consideration by this court even though that case was previously dismissed by the district court and the Ninth Circuit. For these reasons, the court finds that despite Plaintiffs' *pro se* status, Rule 11 sanctions are appropriate here.

## I. Attorneys' Fees

■ The court has discretion to award attorneys' fees and costs pursuant to Fed. R.Civ.P. 11 and 54. In addition, the Supreme Court has recognized that a court has the inherent power to award attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133–2134, 115 L.Ed.2d 27 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975)).[14] Courts require clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power. *E.g., Shepherd v. American Broadcasting Co.,* 62 F.3d 1469 (D.C.Cir. 1995). Here, Plaintiffs signed the pleading indicating that their Amended Complaint was well-grounded in fact and warranted by law, when they should have

---

**14.** The Supreme Court stated that attorneys' fees are properly assessed when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.... The imposition of sanctions ... transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133–34 (internal quotations and citations omitted).

known from prior court rulings that it was not. Therefore, the court concludes that, by clear and convincing evidence, Plaintiffs' action can be characterized as one that is "frivolous" or brought in "bad faith." *See Wood v. McEwen*, 644 F.2d 797 (9th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982);[15] *Trohimovich v. Commissioner of Internal Revenue*, 776 F.2d 873 (9th Cir.1985);[16] *Oliver v. Mercy Medical Center*, 695 F.2d 379, 382 (9th Cir.1982). Accordingly, the court GRANTS Federal Defendants' motion for attorneys' fees.

## II. Order Restricting Filings

The Ninth Circuit recognizes "the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir.), *cert. denied*, 498 U.S. 1001, 111 S.Ct. 562, 112 L.Ed.2d 569 (1990). In particular, a district court may enjoin a vexatious litigant under the All Writs Act, 28 U.S.C. § 1651(a), by issuing an order requiring the litigant to seek permission from the court prior to filing any future suits.

■ An order imposing pre-filing review conditions must satisfy the following requirements: (1) the party must have had adequate notice and an opportunity to oppose the order; (2) there must be an adequate record for review, including a list of all cases and motions that led the court to conclude that a vexatious litigant order was necessary; (3) the court must make a substantive finding as to the frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored to fit the particular problem involved. *De Long*, 912 F.2d at 1147–48.

■ To enjoin an abusive litigant from filing future actions, "it is incumbent on the court to make substantive findings as to the frivolousness or harassing nature of the litigant's actions." *Id.* at 1148 (Internal quotations and cites omitted). To make a finding of frivolousness, the court needs to look at "both the number and contents of the filings as indicia." *Id.*

■ Although Plaintiffs' frequent filings of duplicative actions are burdensome, the court does not find Plaintiffs' "filings are so numerous or abusive that they should be enjoined." *De Long*, 912 F.2d at 1148 (after citing cases in which litigants filed 35, over 50, and over 600 complaints). Moreover, Ninth Circuit case law on vexatious litigant orders suggests that such orders are to be issued very rarely. *Id.* The cases on which the circuit has relied involved litigants who filed dozens or hundreds of suits regarding the same matter. The government has not shown Plaintiffs' activities descend to that level.

However, the court notes that the number of filings alone is not necessarily determinative. *See Salman v. Department of Treasury–IRS*, 899 F.Supp. 473, 474 (D.Nev. 1995). In this case, Plaintiffs appear to allege misconduct by the Federal Judges and court personnel each time they lose a motion or a case. The court finds such conduct is tantamount to harassment. For this reason, this Order shall constitute notice to Plaintiffs that the court will not hesitate to impose appropriate sanctions including a vexatious litigant order should another similar complaint be presented to the court without proper basis in fact and in law. At this time, however, the court DENIES Federal Defendants' Motion to impose a vexatious litigation order upon Plaintiffs.

## STATE DEFENDANTS' MOTION TO DISMISS

Counts One, Two, and Five through Ten allege claims against State Defendants.

---

15. In *Wood*, the Ninth Circuit ruled that a *pro se* plaintiff was required to pay costs and attorneys' fees on appeal. There, the court stated, "[a]lthough we are reluctant to impose penalties against any litigant, particularly one appearing *pro se*, the facts in this case require that we do so ... A penalty is justified in favor of those litigants who have been needlessly put to trouble and expense." 644 F.2d at 802.

16. In *Trohimovich*, the plaintiffs had filed at least fifteen related appeals in the Ninth Circuit within a six-year period, and the court found that the plaintiffs had burdened the court with "patently frivolous claims." 776 F.2d at 875. The court imposed sanctions on the plaintiffs in light of their meritless claims and the court's intent to deter further frivolous appeals. *Id.*

State Defendants filed the instant Motion to Dismiss on several grounds: (1) statute of limitations (2) lack of jurisdiction; (3) failure to state a cause of action for which relief can be granted; (4) the immunity doctrines; and (5) res judicata and the *Younger* abstention doctrine. State Defendants request a dismissal of all claims and an award of attorneys' fees and costs.

## I. Statute of Limitation

State Defendants contend that the constitutional violations in the specific counts against State Defendants are barred by a two-year statute of limitation. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). They contend that Plaintiffs' allegations of a continuing violation do not prevent dismissal under the statute of limitation; State Defendants urge the court to adopt the Fifth Circuit view that the statute of limitation commences to run as of the date that Plaintiffs knew or should have known of the overt acts. *See Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987).

In their Amended Complaint, Plaintiffs claim that the alleged wrongs began as early as January 1990 and are continuing to the present date. Plaintiffs claim that the statute of limitation does not apply here because the deprivation of their constitutional rights is ongoing. *EEOC v. Local 350, Plumbers and Pipefitters*, 982 F.2d 1305 (9th Cir.1992). Additionally, Plaintiffs argued at the hearing that a three-year statute of limitation governs their complaint pursuant to Idaho Code § 5–218.

Congress provided no federal statute of limitation for an action brought under 42 U.S.C. § 1983. However, the United States Supreme Court has held that, because Section 1983 actions are analogous to actions for injuries to personal rights, they are subject to the state statute of limitation for personal injury actions. *Wilson*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Thus the court finds that the pertinent Idaho statute is Idaho Code § 5–219(4), which provides a two-year statute of limitation for actions based on personal injury. The court finds the two-year statute of limitation applicable here.

Although state law controls which limitation period applies, federal law determines when a cause of action accrues. Under federal law, a cause of action accrues the moment the plaintiffs know or have reason to know of the injury that is the basis of their complaint. *Helton*, 832 F.2d at 334–35. Thus, the statute of limitation begins to run from the moment plaintiffs become aware that they have suffered an injury or have sufficient information to know that they have been injured. *Id.; see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

The continuing effects of past harm do not bring a claim within the continuing violation doctrine. *Lorance v. AT & T Technologies*, 490 U.S. 900, 907, 109 S.Ct. 2261, 2266, 104 L.Ed.2d 961 (1981). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* (citations omitted).

The statute of limitation governing Plaintiffs' claims against State Defendants, therefore, began to run at the time the unconstitutional acts allegedly occurred. Plaintiffs' Amended Complaint was filed on August 26, 1994. The alleged acts occurred in: January/March 1990 in the *Halliday* case (Count 1); July 1990 in the *Heil* case (Count 2); February 1992 in the *Bonner County* case (Count 5); February 1992 in the *Oths* case (Count 7); April 1992 in the state bar disciplinary hearing (Count 8); and March 1992 in the *Hepworth* case (Count 9). *See* Plaintiffs' Amended Complaint, at 10, 12, 22, 26, 28, and 30. The dates for each of these alleged violations are outside of the two-year statute of limitation.

The court finds that Plaintiffs' allegations of continuing violations are unfounded in each of the above counts. Plaintiffs do not challenge any particular policy of discrimination that operated against Plaintiffs beyond the alleged incidents. *See EEOC v. Local 350*, 982 F.2d at 1308. Simply characterizing their claims as continuing violations

is insufficient to defeat the statute of limitation. *Singleton*, 632 F.2d at 192.

As the Second Circuit held in *Singleton:*

Characterizing Defendants' separate wrongful acts as having been committed in furtherance of a conspiracy ... does not postpone the accrual of claims based on individual wrongful acts.... To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

*Id.*

In this case, the court finds Plaintiffs' starting dates accurately reflect the time of the alleged acts and are thus controlling for the purposes of the statute of limitation. *Lorance*, 490 U.S. at 907, 109 S.Ct. at 2266. Using the dates listed in Plaintiffs' Amended Complaint, the court finds that the alleged acts transpired more than two years prior to the Amended Complaint. Therefore, the court finds that Counts One, Two, Five, Seven, Eight, and Nine of Plaintiffs' Amended Complaint are time-barred.

## II. Jurisdiction

As an alternative basis for dismissal, State Defendants contend that this court lacks subject matter jurisdiction to hear Plaintiffs' claims. State Defendants argue that federal jurisdiction is improper here because the allegation in the Amended Complaint pertain only to asserted state trial court procedures and perceived errors of fact and law, and the federal courts cannot sit in review of state court judgments.

Federal district courts are courts of limited jurisdiction; they only have subject matter jurisdiction to hear cases in diversity pursuant to 28 U.S.C. § 1332 or cases that raise a federal question pursuant to 28 U.S.C. § 1331.

▬ Diversity of citizenship was not alleged, nor can it be as Plaintiffs and at least one of the Defendants are residents of the State of Idaho. Plaintiffs claim that the district court has jurisdiction under 28 U.S.C. § 1331 [17] (federal question) and 28 U.S.C. § 1343.[18] Amended Complaint, at 3. The court disagrees.

▬ Federal district courts are courts of original jurisdiction; they may not serve as appellate tribunals to review the errors allegedly committed by state courts. *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). In what has become known as the Rooker–Feldman doctrine, the United States Supreme Court proclaimed that federal district courts lack jurisdiction to review decisions of state courts. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–1312, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The district court lacks subject matter jurisdiction either to conduct a direct review of state court judgment or to scrutinize the state court's application of various rules and procedures pertaining to the state case. *Allah v. Superior Court of State of California*, 871 F.2d 887, 891 (9th Cir.1989). Federal district courts do not have jurisdiction even if the challenges to a state court decision allege that the state court's action was unconstitutional. *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1316–1317. The claims raised in district court need not have been argued in the state judicial proceedings for them to barred by the *Rooker–Feldman* doctrine. *Id.* at 483–484 n. 16, 103 S.Ct. at 1315–1316 n. 16.

▬ A district court engages in impermissible appellate review when it hears

---

**17.** 28 U.S.C. § 1331 states: The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. For federal question jurisdiction under this statute, the complaint must either (1) arise under a federal law or the United States Constitution, (2) must allege a "case or controversy" within the meaning of Article III, § 2, or (3) must be described by a jurisdictional

statute. *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699–700, 7 L.Ed.2d 663 (1962).

**18.** 28 U.S.C. § 1343 gives the federal court original jurisdiction over civil actions to recover damages for injury to a person because of the deprivation of a citizenship right or privilege or in furtherance of a 42 U.S.C. § 1985 conspiracy.

claims that are "inextricably intertwined" with the state court decision. *Id.* "[T]he federal claim is 'inextricably intertwined' with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

The Ninth Circuit, however, has distinguished between cases which request "a mere revision of errors and irregularities, or of the legality and correctness of the state court judgment (which are barred for lack of jurisdiction), and the 'investigation of a new case arising upon new facts.'" *MacKay v. Pfeil,* 827 F.2d 540, 545 (9th Cir.1987) (quoting *Barrow v. Hunton,* 99 U.S. (9 Otto) 80, 83, 25 L.Ed. 407 (1878)). *See also Robinson v. Ariyoshi,* 753 F.2d 1468, 1472 (9th Cir. 1985), *vacated on other grounds,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). However the question is framed, the underlying inquiry remains whether "the district court is in essence being called upon to review the state-court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–1316 n. 16.

In *Allah,* the Ninth Circuit held that the district court lacked subject matter jurisdiction to review the state court's decision dismissing a personal injury complaint for failure to comply with a discovery order. 871 F.2d at 889. Allah argued that the state court violated his federally protected equal protection and due process rights by dismissing his case on "procedural technicalities," instead of making a final determination on the merits. *Id.* at 891. The Ninth Circuit rejected Allah's argument and held that federal district courts cannot review state court decisions even if the state court's actions were allegedly unconstitutional. *Id.*

In *MacKay,* the Ninth Circuit held that the federal district court of Alaska lacked subject matter jurisdiction over an action for declaratory and injunctive relief from an unappealed state court judgment, which required the father to pay the mother's estate amounts incurred in securing the child's return after the father fled with the child out of state in violation of a court order. 827 F.2d

at 543. The Ninth Circuit held that Mac-Kay's attack of the state court judgment for lack of personal jurisdiction and as erroneous due to the existence of a substantive defense was barred by the *Rooker–Feldman* doctrine because it is "substantially a continuation of the state court proceedings." *Id.,* at 544. The court held that the claims should be resolved by the state appellate courts, not by a federal court of original jurisdiction. *Id.,* at 545.

In *Feldman,* the United States Supreme Court held that the district court had no jurisdiction to review Feldman's constitutional challenge to the application of the District of Columbia Bar rule in his particular case. 460 U.S. at 488, 103 S.Ct. at 1317–1318. Feldman argued that the District of Columbia Court of Appeals violated the Due Process Clause and federal antitrust laws in failing to consider his legal training and experience to waive the law school graduation requirement for membership to the District of Columbia bar. *Id.,* at 480, 103 S.Ct. at 1313–1314. The Supreme Court rejected Petitioner's appeal to the district court even though the District of Columbia Court of Appeals only issued a per curiam order denying Feldman's petition. *Id.* at 468, 103 S.Ct. at 1307. It held that although the proceedings in Feldman's case did not assume the form commonly associated with judicial proceedings, federal district court review was precluded because the proceedings were judicial in nature and effect. *Id.,* at 482, 103 S.Ct. at 1314–1315. Furthermore, the Supreme Court stated that while a petitioner can launch a general challenge to state bar association rules in the federal district court, he cannot challenge the state court decision in his particular case even if he believe that the state court acted unconstitutionally. *Id.* at 486, 103 S.Ct. at 1316–1317.

Together these cases establish that the federal district court cannot review state court proceedings where the claims are tantamount to an appeal of the state court decisions. These cases further indicate that a state court's application of its rules and procedures is unreviewable by a federal district court. The federal district court only has jurisdiction to hear general challenges to

state rules or claims that are based on "the investigation of a new case arising upon new facts." *MacKay*, 827 F.2d at 545. Because Plaintiffs allege numerous claims under each count, the court will review the allegations regarding the small claims cases, the allegations regarding the Idaho State cases, and the allegations referencing the state bar proceedings separately.

### A. *Small Claims Cases* (Counts One and Two)

■ In Counts One and Two, Plaintiffs allege procedural misconduct in small claims court proceedings. Specifically, in Count One, Plaintiffs allege that Defendants Harden, Marano, Scott, and Hutter conspired in the *Halliday* case to predetermine the outcome of these cases by failing to adequately record the proceedings or maintain the exhibits, and by failing to timely inform Plaintiffs of the court's ruling and Plaintiffs' right to appeal. *See* Amended Complaint, at 11, 13. In the *Heil* case (Count 2), Plaintiffs repeat these same allegations against Defendants Harden, Scott, and Hutter. Plaintiffs further allege that these Defendants conspired with the Bonner County deputies to fabricate fraudulent criminal charges against the Plaintiffs and to delay the serving of summons. *Id.* at 13.

■ The court finds Plaintiffs' allegations in Counts One and Two constitute an impermissible collateral attack on these state court decisions.[19] This court lacks subject matter jurisdiction to review the small claims court's application of various rules and procedures in the *Halliday* and *Heil* cases. Such a review would necessarily entail a prohibited inquiry into the state court judgment. *Worldwide Church of God v. McNair*, 805 F.2d 888, 892 (9th Cir.1986) ("If, in order to resolve the claim, the district court would have to go beyond mere review of the state rule *as*

promulgated, to an examination of the rule *as applied* by the state court to the particular factual circumstances of [the plaintiffs'] case, then the court lacks jurisdiction" (emphasis in original)). Here, Plaintiffs do not challenge the rules themselves, rather they challenge the state court's application of those rules in the *Halliday* and *Heil* cases. The court finds that Plaintiffs' claims in Counts One and Two are inextricably intertwined with the state court decisions and thereby precluded by the *Rooker–Feldman* doctrine.

As an additional note, the fact that Plaintiffs' claims are identified as Due Process and Equal Protection violations does not affect the application of the *Rooker–Feldman* doctrine to Counts One and Two. *See Allah*, 871 F.2d at 891. "The *Rooker–Feldman* doctrine applies even though the direct challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Id.* (citing *Feldman*, 460 U.S. at 484–86, 103 S.Ct. at 1316–17). For the above reasons, the court concludes that it lacks subject matter jurisdiction to hear Counts One and Two of the Plaintiffs' Amended Complaint.

### B. *State Court Cases* (Counts Five, Seven, and Nine)

■ Counts Five, Seven, and Nine allege disagreement with procedures and decisions rendered in Idaho state court decisions in the *Bonner County* case, the *Oths* case, and the *Hepworth* case. In Count Five, Plaintiffs claim that Defendant Michaud accepted fraudulent affidavits and allowed perjured testimony in the *Bonner County* case. Plaintiffs also accuse Defendant Hutter of doctoring the record.

In Count Seven, Plaintiffs allege that Defendants Bakes, Boyle, McDevitt, Bistline, Johnson, Lyons, and Bianchi accepted fraud-

19. For the record, the court notes that the *Rooker–Feldman* doctrine is applicable to lower state court decisions. In *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir.1986), the Ninth Circuit made clear that the *Rooker–Feldman* doctrine applies where, as in the instant situation, the state court decision under attack is not that of the state's highest court. *See also MacKay*, 827 F.2d at 545, n. 10. This rule pre-

vents a waste of judicial resources and unnecessary friction between state and federal courts. *Id.* For the same reason, the availability of appellate court review provides further basis to preclude these claims from federal court. State courts are deemed to be as competent as federal courts to decide federal constitutional issues. *Allen v. McCurry*, 449 U.S. 90, 105, 101 S.Ct. 411, 420–21, 66 L.Ed.2d 308 (1980).

ulent documentation and tampered with the official record in the *Oths* case by changing the date of filing and then obliterating Plaintiffs' Reply to Response to Petition for Writ of Mandamus.

Finally, in Count Nine, Plaintiffs assert lack of due process in the *Hepworth* case because Judge Michaud failed to recuse himself, asked Plaintiff Charles Samuel to submit to questioning about his mental competency, and refused Plaintiffs' permission to amend their complaint or present all of their exhibits. Plaintiffs also allege that Defendant Savage issued incorrect subpoenas, and along with Defendants Hutter, Scott, and Roberts failed to timely file Plaintiffs' documents.

It is clear that the allegations in Counts Five, Seven, and Nine are inextricably intertwined with the respective state court decisions and are barred by the *Rooker–Feldman* doctrine. To entertain Plaintiffs' constitutional claims would require an impermissible review of the state courts' legal determinations. *See Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois,* 74 F.3d 763, 766 (7th Cir.1996) (claims for relief are barred by *Rooker–Feldman* if upholding the claims and granting relief would effectively void the state court ruling). As in McNair, the court finds that it would be impossible for the district court to review in the abstract the Plaintiffs' constitutional challenges here. 805 F.2d at 892. Therefore the court DISMISSES Plaintiffs' claims in Counts Five, Seven, and Nine for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.

### C. *State Bar Disciplinary Proceedings*

State Defendants maintain that this court also lacks subject matter jurisdiction to review the state bar disciplinary proceeding implicated in Count Eight of the Amended Complaint. State Defendants cite *Brown v. Board of Bar Examiners of the State of Nevada,* 623 F.2d 605, 609–10 (9th Cir.1980) for the proposition that federal jurisdiction under 28 U.S.C. § 1343 is limited to facial challenges to state rules, and does not extend to the application of those rules to particular individuals.

In Count Eight, Plaintiffs maintain that State Bar Defendants conspired to predetermine the outcome of the state bar disciplinary hearing. Plaintiffs contend that the Hearing/Review Committee Decision should be rendered void because the State Bar Defendants accepted fraudulent instruments, improperly threatened Plaintiffs with sanctions, and failed to properly record the proceedings.

Before delving into the substantive arguments, the court notes that the *Rooker–Feldman* doctrine applies here because the state bar is an arm of the state courts, and the state bar disciplinary hearing is judicial in nature and effect. *See Feldman,* 460 U.S. at 481–2, 103 S.Ct. at 1314–15. Under the *Rooker–Feldman* doctrine, the court lacks jurisdiction to hear Plaintiffs' claims because all of Plaintiffs' claims express dissatisfaction with the manner in which these state proceedings were conducted. Plaintiffs do not allege any facial challenges to the state bar rules. *Brown,* 623 F.2d at 609–10. They merely allege a "revision of errors and irregularities" or of the "legality and correctness" of the Hearing/Review Committee Decision in the 1992 disciplinary hearing which is not permissible in federal district court. *MacKay,* 827 F.2d at 545.

Accordingly, the court holds that it lacks subject matter jurisdiction over Counts One, Two, Five, Seven, Eight and Nine of Plaintiffs' Amended Complaint.

### III. Failure to State a Claim

For the remaining claims that survive the jurisdiction and statute of limitation defenses, State Defendants argue that Plaintiffs fail to state a cognizable claim under 42 U.S.C. § 1983. They argue that Plaintiffs' general allegations of conspiracy, their disagreement with small claims court procedure, their claims of judicial misconduct in State Judges' accepting testimony and documents into evidence, their allegations against Oths and the State Bar Defendants, and their objections to the policy to raise copy prices in the Bonner County Law Library do not allege constitu-

tional violations entitled to redress under this statute. The court agrees. *See* Federal Defendants' Motions, Part I, *supra.*

As noted previously, in order to hold a defendant liable under 42 U.S.C. § 1983, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the constitution or the laws of the United States." *Leer,* 844 F.2d at 632.

■ The court DISMISSES generalized allegations of conspiracy to deprive Plaintiffs of their constitutional rights alleged in the first seven pages of the complaint as conclusory. *Id.* Furthermore, the court concludes that Plaintiffs' allegations targeting the State Defendants do not demonstrate a due process or equal protection violation. *See* Federal Defendants' Motions, Part I, *supra.* Here, too, Plaintiffs fail to prove the requisite intent required to state a colorable § 1983 claim. *See Wood v. Ostrander,* 879 F.2d at 587. Accordingly, the court DISMISSES Plaintiffs' Amended Complaint against the State Defendants in its entirety under Fed.R.Civ.P. 12(b)(6).

## IV. Immunity Doctrines

Although all claims against State Defendants have been dismissed based on a lack of jurisdiction, the statute of limitation, and Fed.R.Civ.P. 12(b)(6), the court will briefly discuss the immunity doctrines as an alternative basis for dismissing Plaintiffs' claims in this case.

### A. State Judges

As discussed previously under Part IIA of Federal Defendants' Motions, judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts. *Ashelman II,* 793 F.2d at 1075. Even grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity. *Stump,* 435 U.S. at 355–57, 98 S.Ct. at 1104–05. "As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies." *Ashelman,* 793 F.2d

at 1078. A judge loses absolute immunity only when he or she acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature. *Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir.1988).

■ Here, Plaintiffs claim that State Judges deprived them of a fair trial in the *Halliday* case (Count One), the *Heil* Case (Count Two), the *Bonner* case (Count Five), the *Oths* case (Count Seven), and the *Hepworth* case (Count Nine). On the jurisdictional question, the court notes that Plaintiffs brought these cases for adjudication under state law in the Idaho state courts. Under Idaho law, the district courts have original jurisdiction over all state cases and proceedings. Idaho Code § 1–705. And there is nothing in the record reflecting that these judges acted in the clear absence of all jurisdiction in adjudicating these cases. *See Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7. As such, the court finds that the doctrines of absolute and qualified immunity apply here.

In this case, the doctrine of absolute immunity bars suit against State Judges for their judicial decisions involving recusal, as well as those pertaining to the admission of witnesses, evidence, pleadings, or a particular line of questioning at a hearing. *Id.* at 363, 98 S.Ct. at 1108. Additionally, the court finds that the doctrine of qualified immunity shields them from liability for their administrative decisions involving maintenance of the judicial record, supervision of court employees, and court library policies. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The court finds the judges' acts were objectively reasonable and did not violate any clearly established constitutional rights. *Id.* Accordingly, the court dismisses Plaintiffs' claims against the State Judges as barred by the doctrines of absolute and qualified immunity.

### B. State Bar Defendants

Next, State Defendants argue that absolute quasi-judicial immunity extends to executive officials conducting administrative proceedings. *See Butz,* 438 U.S. at 516–17, 98 S.Ct. at 2915–16. In particular, they claim that State Bar Defendants should be accorded absolute immunity for actions performed

within the jurisdiction of the committee's duties. *Simons v. Bellinger,* 643 F.2d 774 (D.C.Cir.1980); *Clark v. Washington,* 366 F.2d 678, 681 (9th Cir.1966).

 State bar association committees members policing the legal profession are entitled to absolute quasi-judicial immunity for their actions. *Simons,* 643 F.2d at 779; *Clark,* 366 F.2d at 681. The Ninth Circuit held that state bar disciplinary proceedings are an "integral part of the judicial process," and in performing this role, the bar committee members are entitled to the same immunity afforded to the state's prosecuting attorneys. *Clark,* 366 F.2d at 681. The *Simons* court further held that the committee members' work is functionally comparable to the work of judges which requires the full protection of absolute immunity. *Simons,* 643 F.2d at 780 (judicial functions include initiation of prosecution, promulgation of rules, and adjudication of disciplinary cases).

 Here, Plaintiffs have sued State Bar Defendants for accepting fraudulent documents, failing to record proceedings, failing to render a timely decision, conducting a fraudulent appeal hearing, and inhibiting Plaintiffs from talking about the proceedings. Amended Complaint, at 27–29. Such procedural and substantive rulings in a disciplinary hearing are clearly judicial-type acts shielded by the doctrine of quasi-judicial absolute immunity. *Simons,* 643 F.2d at 781–82. The court therefore concludes that Plaintiffs' claims against State Bar Defendants are barred by the doctrine of absolute quasi-judicial immunity and accordingly, DISMISSES Count Eight of the Amended Complaint.

 For similar reasons, the court finds good cause to dismiss Plaintiffs' claims against Oths in Count Six. The Amended Complaint accuses Oths of violating Plaintiffs' constitutional rights by allegedly failing to adequately prosecute or litigate Plaintiffs' grievances against the Hepworth firm. Specific allegations include misleading Plaintiffs and unduly influencing them to surrender their rights during the course of the disciplinary proceedings. Amended Complaint, at 25. The court finds these prosecutorial-type activities fit squarely within the absolute quasi-judicial immunity framework. *Clark,* 366 F.2d at 681. Accordingly, the court also DISMISSES Count Six of the Complaint against Oths.

### C. State Clerk Defendants

State Clerk Defendants seek to invoke judicial immunity. Absolute quasi-judicial immunity is not available for ministerial and administrative functions. *See* Federal Defendants Motions, Part IIC, *supra.* However, State Clerk Defendants do assert a valid qualified immunity defense.

As noted earlier, there are essentially three basic inquiries to the qualified immunity test: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so clearly established as to alert a reasonable person to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *See Romero,* 931 F.2d at 627. Plaintiffs have the initial burden of proving that the rights allegedly violated were clearly established at the time of the alleged misconduct. *Houghton,* 965 F.2d at 1534; *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984). Additionally, Plaintiffs face a heightened pleading standard where they must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. *Branch I,* 937 F.2d at 1386.

Here, the court finds that Plaintiffs have failed to meet the heightened pleading burden of setting forth evidence of unlawful intent in a non-conclusory fashion on the part of State Clerk Defendants. *Id.* Thus, the court DISMISSES Plaintiffs' claims against State Clerk Defendants.

### V. *Res Judicata* and *Younger* Abstention Doctrine

The State Defendants argue that this court should abstain from adjudicating the merits of the state cases pursuant to the doctrine of res judicata and/or under principles set forth by the United States Supreme Court in *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 748, 27 L.Ed.2d 669 (1971). Having

already dismissed the claims against the State Defendants under several alternative doctrines, the court finds no need to address the res judicata and *Younger* abstention arguments tendered here.

## VI. Attorneys' Fees and Costs

 State Defendants request an award of attorneys' fees and costs pursuant to Fed. R.Civ.P. 11 and 54 and pursuant to 28 U.S.C. § 2101. They contend that Plaintiffs' amended complaint was frivolously filed, without foundation and without any factual grounds. The court agrees.

The court has discretionary authority to grant attorneys' costs and fees where the action is frivolous or brought in bad faith. Fed.R.Civ.P. 11 and 54. A penalty is also justified to deter future filings of meritless claims. *See Trohimovich,* 776 F.2d at 875.

Here, the court finds Plaintiffs' unrelenting pursuit of the claims that have clearly been adjudicated in state court is a clear attempt to undermine the integrity of the state court system. The court finds Plaintiffs' unsubstantiated allegations against the Court and its staff entirely void of merit. There is no factual evidence of a conspiracy to deprive the Plaintiffs of their constitutional rights. This action against State Defendants can therefore be characterized as one that is "frivolous" or brought in "bad faith" in light of all facts presented. *See Wood,* 644 F.2d at 802 ("A penalty is justified in favor of those litigants who have been needlessly put to trouble and expense."). The court therefore GRANTS State Defendants' motion for attorneys' fees and costs.

Both the Federal and State Defendants shall therefore present verified petitions substantiating their costs and attorneys' fees associated with this motion and Plaintiffs shall have an opportunity to contest the amounts pursuant to Local Rule 54.3.

## REMAINING DEFENDANTS

In concluding this matter, the court sua sponte DISMISSES claims against the remaining Defendants (not alluded to as "Federal Defendants" or "State Defendants") including Todd Foster, Spokesman Review Newspaper, Evan "Chip" Roos, Robert McCammon, and Corroon & Black Administrative Services, Inc. ("Remaining Defendants") for failure to state a claim upon which relief can be granted. A trial court may dismiss a claim sua sponte under Fed. R.Civ.P. 12(b)(6) without notice where the claimant cannot possibly win relief. *Omar v. Sea–Land Serv., Inc.,* 813 F.2d 986, 991 (9th Cir.1987) (citing *Wong v. Bell,* 642 F.2d 359, 361–62 (9th Cir.1981)).

The court DISMISSES the *Bivens / § 1983* claims against the above named Defendants because there is no evidence that Remaining Defendants were acting under the color of state law or that their conduct deprived Plaintiffs of a constitutionally protected right. *See* Federal Defendants' Motions, Part IA, *supra; see also, Leer,* 844 F.2d at 632.

Similarly, the court determines that neither the general conspiracy claims nor those specifically implicating McCammon, and Corroon & Black Administrative Services, Inc. in Count Nine are actionable as to Remaining Defendants, because Plaintiffs do not allege sufficient factual detail to show an agreement to deprive Plaintiffs of their civil rights. *See* Federal Defendants' Motions, Part IB, *supra; see also, Burns,* 883 F.2d at 821.

Furthermore, the court finds that the defamation claims in Counts Four and Eleven against Foster, Spokesman Review Newspaper, and Roos, are defeated by Plaintiffs' failure to allege loss of a recognizable property or liberty interest protected by the Constitution. *See* Federal Defendants' Motions, Part IE, *supra; see also, Cooper,* 924 F.2d at 1532.

For the above reasons, the court sua sponte DISMISSES Plaintiffs' action against Remaining Defendants.

## CONCLUSION

In conclusion, the court makes the following rulings in this case; the court

(a) GRANTS Federal Defendants' Motion for Summary Judgment and DISMISSES all claims against Federal Defendants;

(b) GRANTS IN PART and DENIES IN PART Federal Defendants' Motion for

Sanctions. The court awards attorneys' fees and costs to Federal Defendants; however, the court will not impose a vexatious litigation order on the Plaintiffs at this juncture;

(c) GRANTS State Defendants' Motion to Dismiss as to all claims against State Defendants;

(d) GRANTS State Defendants' Motion for Reasonable Attorneys' Fees and Costs in defending this suit; and

(e) DISMISSES sua sponte all claims against Remaining Defendants for failure to state a claim upon which relief can be granted.

As the court has dismissed Plaintiffs' action as to all Defendants named in the Amended Complaint, this case is hereby closed.

IT IS SO ORDERED.